UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

————————————————————

FASTSHIP, LLC and LIQUIDATING     No. 1:17-cv-2919 (NLH/KMW)
TRUST OF FASTSHIP, INC.,
                                  **OPINION**
            Plaintiffs,           **(Temporarily Under Seal)**

      v.

LOCKHEED MARTIN CORPORATION
and GIBBS & COX, INC.,

            Defendants.

————————————————————


**<u>APPEARANCES</u>:**

CHRISTOPHER JOHN LEAVELL
KLEHR HARRISON HARVEY BRANZBURG LLP
457 HADDONFIELD ROAD - SUITE 510
CHERRY HILL, NJ 08002
      On behalf of Plaintiffs

RAYMOND HOWARD LEMISCH
KLEHR HARRISON HARVEY BRANZBURG LLP
1835 MARKET STREET
PHILADELPHIA, PA 19103
      On behalf of Plaintiffs

GREGORY M. WILLIAMS (pro hac vice)
RICHARD W. SMITH (pro hac vice)
SCOTT A. FELDER (pro hac vice)
KATHERINE C. CAMPBELL (pro hac vice)
WILEY REIN LLP
1776 K STREET NW
WASHINGTON, DC 20006
      On behalf of Plaintiffs

DONALD E. STOUT (pro hac vice)
FITCH, EVEN, TABIN & FLANNERY LLP
1250 23RD STREET NW, SUITE 410
WASHINGTON, DC 20037
      On behalf of Plaintiffs

MARK SIGMUND LICHTENSTEIN
CROWELL & MORING LLP
590 MADISON AVENUE
20TH FLOOR
NEW YORK, NY 10022
  On behalf of Defendant Lockheed Martin Corporation

MICHAEL J. SONGER (pro hac vice)
ASTOR H.L. HEAVEN (pro hac vice)
CROWELL & MORING LLP
1001 PENNSYLVANIA AVENUE, NW
WASHINGTON, DC 20004
  On behalf of Defendant Lockheed Martin Corporation

LIZA M. WALSH
CHRISTOPHER MATTHEW HEMRICK
COLLEEN M. MAKER
WALSH PIZZI O'REILLY FALANGA LLP
ONE RIVERFRONT PLAZA
1037 RAYMOND BLVD.
6TH FLOOR
NEWARK, NJ 07102
  On behalf of Defendant Gibbs & Cox, Inc.

PASQUALE A. RAZZANO (pro hac vice)
DOUGLAS SHARROTT
JOSH CALABRO (pro hac vice)
FITZPATRICK, CELLA, HARPER, & SCINTO
1290 AVENUE OF THE AMERICAS
NEW YORK, NY 10104
  On behalf of Defendant Gibbs & Cox, Inc.


**HILLMAN, District Judge**

  This matter concerns non-disclosure agreements (NDAs) between FastShip, Inc. and Defendants Lockheed Martin Corporation ("Lockheed") and Gibbs & Cox, Inc. ("G&C") concerning the design of a semi-planing monohull ("SPMH").  The design is used in large ships to maintain higher speeds in heavy seas.  Plaintiffs FastShip, LLC and the Liquidating Trust of

2

FastShip, Inc. ("Liquidating Trust") purport to be the assignees of FastShip, Inc. pursuant to a confirmed plan of reorganization ("Confirmed Plan").

Before the Court are Lockheed's Motion to Dismiss and G&C's Motion to Dismiss.  For the reasons that follow, the Court will deny both Motions to Dismiss.  This matter will proceed through a limited period of discovery on the issue of the statute of limitations defense, and, if warranted, dispositive motions on that isolated issue.

## I.

The Court takes its facts from Plaintiffs' September 6, 2017 Second Amended Complaint.  For both commercial and military purposes, the faster a large ship can go in heavy seas the better.  Conventional wisdom says large ships should use displacement hulls, which are limited in their capacity to reach speeds over forty knots.  David Giles, FastShip, Inc.'s[1] founder and technical director, considered this problem and determined the solution was an enlarged SPMH design, which had not been

---

[1]    Plaintiffs' Second Amended Complaint often does not distinguish between FastShip, Inc. and FastShip, LLC, a distinction this Court finds is significant in deciding these motions.  The Court applies its understanding of the evolution of these entities and identifies the entities specifically as either FastShip, Inc. or FastShip, LLC in this recitation of the facts.

used for larger vessels, combined with waterjets, rather than propellers.

After the navies of Great Britain and the United States rejected his idea, Giles established Thornycroft, Giles & Company Inc. in March 1988.  Giles and this company continued developing the SPMH design and filed for patent protection in the United Kingdom on October 11, 1989.  This eventually resulted in the issuance of U.S. patents 5,080,032 and 5,231,946 covering the SPMH design for large vessels.  FastShip, Inc. was the sole owner of these patents.

> The patented concept used the shape of the hull and placement of waterjets to provide lift for larger vessels to reduce resistance and thus achieve higher speeds without impairing stability or cargo capacity. The design allowed such higher speeds without the need to increase the vessel's length (which would have reduced seaworthiness and stability) or decrease its beam (which would have reduced stability and the available stern width for the installation of water jets), an accomplishment long considered the equivalent of "breaking the sound barrier" in aeronautical technology.

Due to continued skepticism in the field, FastShip, Inc. paid experts for analysis and testing to prove the viability of the design.  FastShip, Inc. also prepared extensive drawings to enable the construction of an SPMH vessel.  FastShip, Inc. engaged entities to run simulations of the design and to conduct elaborate tank testing to prove the design's viability. FastShip, Inc. paid approximately $40 million for these tests

4

and data.  Plaintiffs refer to this testing and data
cumulatively as the "Trade Secrets."

In 2001, in contemplation of a commercial collaboration,
FastShip, Inc. and Lockheed entered into an NDA.  In February
2003, FastShip, Inc. and Lockheed entered into another NDA in
connection with possibly collaborating on the U.S. Navy's
Littoral Combat Ship (LCS) Program ("LCS Program").  Also in
February 2003, FastShip, Inc. and G&C entered into a separate
NDA.  These NDAs were "for the purpose of sharing information
regarding potential collaboration on the LCS Program" and "did
not authorize or allow Defendants to use FastShip's Trade
Secrets on the LCS Program without further written approval from
FastShip."  Under the February 2003 NDAs, and other
confidentiality agreements entered into, FastShip, Inc. shared
its Trade Secrets with Defendants.

Prior to the 2003 NDAs, Lockheed had pursued the LCS
Program independently using a different hull design.  In October
2002, Lockheed withdrew that proposal and joined with G&C, which
was competing with another distinct design.

On February 26, 2003, following a U.S. Navy announcement
greatly increasing its operational requirements for the LCS
Program, Lockheed invited FastShip, Inc. to give a detailed
presentation on its SPMH technology.  FastShip, Inc. provided
the full details of its research and development.  Following

5

this presentation, Lockheed verbally invited FastShip, Inc. to
participate in the LCS Program.  The request was repeated in
writing on March 10, 2003.  On March 20, 2003, FastShip, Inc.
agreed to be included in the Lockheed team for the LCS Program,
which also included G&C and later another entity.  A March 2003
announcement stated:

> Lockheed and FastShip, Inc. are parties to a Memorandum
> of Understanding dated November 2, 2001 relating to
> cooperation with respect to commercialization of vessels
> to be built to a patented design developed by FastShip,
> Inc.  While this MOU relates primarily to the development
> of the TG770 [commercial] vessel, it also contemplates
> cooperation in marketing the FastShip design to the U.S.
> Military.  Lockheed has determined that a variant of the
> TG-770 patented design and expertise developed by
> FastShip, Inc. in high speed ships may be applicable to
> the Littoral Combat Ship.  Lockheed desires to have
> access to FastShip, Inc.'s technology and technical
> expertise (1) to assist in responding to the FRP (Request
> for Proposals) and, (2) should the Lockheed team be
> selected as one of the preliminary design teams, for
> development of the preliminary design for the Littoral
> Combat Ship.

The parties agreed Lockheed was permitted to include FastShip,
Inc. as a participant on its team for the purpose of responding
to the LCS Program request for proposals.  It was also agreed
that FastShip, Inc. would provide Lockheed and G&C with
information to help define FastShip, Inc.'s involvement.  It was
agreed that all information was exchanged subject to the 2003
NDAs.

    In Lockheed's submission to the U.S. Navy for the
preliminary design contract for the LCS Program, Lockheed

6

specifically noted the contributions of FastShip, Inc.  On May 27, 2004, the U.S. Navy selected Lockheed to conduct the preliminary design work for the LCS Program.  However, Lockheed did not include FastShip, Inc. on its team nor was FastShip, Inc. included in the subsequent design and build work Lockheed was awarded on the LCS Program.

Plaintiffs allege Defendants "used FastShip's Trade Secrets to perform the preliminary design contract and to win and perform the subsequent aspects of the LCS Program" and that such use "was without FastShip's permission and thus was a breach of the February 2003 NDAs with those parties as well as a misappropriation of FastShip's Trade Secrets."

Plaintiffs allege Defendants conducted extremely limited tank testing on its vessels.  Plaintiffs allege that the testing Defendants did conduct was largely to fill a "gap" in FastShip, Inc.'s testing.  Plaintiffs plead:

> That Defendants did not conduct the extensive tank tests that the U.S. Navy typically requires for a new hull design, particularly when the LCS used a hull design that was not only previously unused, but also previously rejected by the Navy, strongly suggests that Defendants improperly relied on FastShip's testing in connection with the LCS Program.  That the limited testing Defendants did conduct was directed at calm water conditions for which FastShip did not test further strengthens that conclusion.

Plaintiffs allege Defendants concealed their use of the Trade Secrets, in one instance stating that the LCS ship design was a multi-chined hull and not based on FastShip, Inc.'s hull design.

On November 8, 2008, the U.S. Navy commissioned the USS Freedom (LCS-1), a ship publicly claimed by the U.S. Navy and Lockheed to incorporate a revolutionary semi-planing monohull. On September 22, 2012, the Navy commissioned the USS Fort Worth (LCS-3).  Eleven other Lockheed vessels are under construction or on order.

FastShip, LLC[2] separately filed a patent suit against the United States under 28 U.S.C. § 1498 based on the LCS-1 vessel. On April 28, 2017, the court found the LCS-1 infringed the patents.

Plaintiffs' Second Amended Complaint asserts two counts: (1) breach of contract (Count I) and (2) misappropriation of trade secrets (Count II).  On September 27, 2017, Defendants separately filed Motions to Dismiss Plaintiffs' Second Amended Complaint.

## II.

"[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over

---

[2]   As will be elaborated on later in this Opinion, FastShip, Inc. initiated a Chapter 11 bankruptcy proceeding, which resulted in the creation of FastShip, LLC.  This information is largely omitted from Plaintiffs' Second Amended Complaint.

the category of claim in suit (subject-matter jurisdiction) and the parties (personal jurisdiction)." Sinochem Int'l Co. v. Malay. Int'l Shipping Corp., 549 U.S. 422, 430-31 (2007). "'Without jurisdiction the court cannot proceed at all in any cause'; it may not assume jurisdiction for the purpose of deciding the merits of the case." Id. at 431 (quoting Steel Co. v. Citizens for Better Env't, 523 U.S. 83, 94 (1998)). Accordingly, the Court must first determine that it has subject matter jurisdiction over this matter and personal jurisdiction over Defendants.

As part of its inquiry into subject matter jurisdiction, the Court must determine whether Plaintiffs have standing to pursue this action. Petroleos Mexicanos Refinacion v. M/T King A (EX-TBILISI), 377 F.3d 329, 334 (3d Cir. 2004) ("Standing is a question of subject matter jurisdiction."). As "[s]ubject matter jurisdiction is 'fundamentally preliminary' to both the issues of personal jurisdiction and venue," the Court begins there. See Tifa, Ltd. v. Republic of Ghana, 692 F. Supp. 393, 398 (D.N.J. 1988) (quoting Leroy v. Great W. United Corp., 443 U.S. 173, 180 (1979)).

**A. Subject Matter Jurisdiction**

**1. Diversity Jurisdiction**

This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332. FastShip, LLC is a limited

liability company whose sole member is the Liquidating Trust. See Zambelli Fireworks Mfg. Co. v. Wood, 592 F.3d 412, 418 (3d Cir. 2010) (stating that the citizenship of an LLC is determined by the citizenship of each of its members). The Liquidating Trust is pleaded as a "traditional trust." "[T]he citizenship of a traditional trust is only that of its trustee . . . ." GBForefront, L.P. v. Forefront Mgmt. Grp., LLC, No. 16-3905, 2018 WL 1866693, at *7 (3d Cir. Apr. 19, 2018). The trustee of the Liquidating Trust is the Brownstein Corporation, which is incorporated, and has its principal place of business, in Pennsylvania. See 28 U.S.C. § 1332(c)(1) ("[A] corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business . . . ."). Accordingly, both Plaintiffs are citizens of Pennsylvania.

Lockheed is incorporated in Maryland and has its principal place of business there. G&C is incorporated in New York and has its principal place of business in Virginia. Accordingly, the citizenship of Plaintiffs is diverse from the citizenship of Defendants. Plaintiffs plead an amount in controversy in excess of $75,000, exclusive of interest and costs, giving this Court diversity jurisdiction under 28 U.S.C. § 1332.

## 2. Article III Standing

"A motion to dismiss for want of standing is . . . properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter." Constitution Party v. Aichele, 757 F.3d 347, 357 (3d Cir. 2014) (quoting Ballentine v. United States, 486 F.3d 806, 810 (3d Cir. 2007)). "A district court has to first determine, however, whether a Rule 12(b)(1) motion presents a 'facial' attack or a 'factual' attack on the claim at issue, because that distinction determines how the pleading must be reviewed." Id.

> A facial attack, as the adjective indicates, is an argument that considers a claim on its face and asserts that it is insufficient to invoke the subject matter jurisdiction of the court, because, for example, it does not present a question of federal law, or because there is no indication of a diversity of citizenship among the parties, or because some other jurisdictional defect is present. . . . A factual attack, on the other hand, is an argument that there is no subject matter jurisdiction because the facts of the case – and here the District Court may look beyond the pleadings to ascertain the facts – do not support the asserted jurisdiction. . . . In sum, a facial attack "contests the sufficiency of the pleadings," "whereas a factual attack concerns the actual failure of a [plaintiff's] claims to comport [factually] with the jurisdictional prerequisites."

Id. at 358 (alterations in original) (citations omitted) (first quoting In re Schering Plough Corp. Intron, 678 F.3d 235, 243 (3d Cir. 2012); and then quoting CNA v. United States, 535 F.3d 132, 139 (3d Cir. 2008)).

"A Rule 12(b)(1) standing challenge may attack the

complaint facially or may attack the factual basis for standing." Askew v. Trs. of the Gen. Assembly of the Church of the Lord Jesus Christ of the Apostolic Faith, Inc., 684 F.3d 413, 417 (3d Cir. 2012).  The Court finds that, in light of recent case law within the Third Circuit, it must consider any challenge at this stage of the litigation to be facial.

"[R]ecent Third Circuit cases suggest that only facial attacks, and not factual attacks, can be brought in a motion to dismiss before an answer is filed." Bustamante v. D.O. Prods., LLC, No. 16-4618, 2017 WL 3782793, at *2 (D.N.J. Aug. 30, 2017); accord Curlin Med. Inc. v. ACTA Med., LLC, No. 16-2464, 2016 WL 6403131, at *2 (D.N.J. Oct. 27, 2016) ("[T]he Third Circuit's recent cases suggest that only facial attacks, and not factual attacks, can be brought in a motion to dismiss before an answer is filed."); Smalls v. Jacoby & Myers, LLP, No. 15-6559, 2016 WL 354749, at *2 (D.N.J. Jan. 26, 2016) ("While [Berardi v. Swanson Memorial Lodge No. 48 of the Fraternal Order of Police, 920 F.2d 198 (3d Cir. 1990)] does appear to support Defendants' proposition [that "both facial and factual attacks may occur prior to an answer being filed"], the Third Circuit's recent cases do not."); see, e.g., Aichele, 757 F.3d at 358 ("The Commonwealth filed the attack before it filed any answer to the Complaint or otherwise presented competing facts.  Its motion was therefore, by definition, a facial attack."); Hendrick v.

<u>Aramark Corp.</u>, 263 F. Supp. 3d 514, 517 (E.D. Pa. 2017) ("Where a Rule 12(b)(1) motion is filed prior to an answer, . . . it will be considered a facial challenge to jurisdiction.").

This Court finds that, in light of recent case law from this Circuit, it must consider Defendants' standing argument to be a facial attack, as Defendants have not yet filed an answer. Nonetheless, as in considering any Rule 12(b)(6) motion, the Court will consider matters of public record and undisputed documents that form the basis of Plaintiffs' Second Amended Complaint.[3]

The Constitution confines the power of federal courts as extending only to "Cases" and "Controversies."  Art. III, § 2. "No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." <u>Raines v. Byrd</u>, 521 U.S. 811, 818 (1997) (quoting <u>Simon v. E. Ky. Welfare Rights Org.</u>, 426 U.S. 26, 37 (1976)).

> There are three well-recognized elements of Article III standing: First, an "injury in fact," or an "invasion of a legally protected interest" that is "concrete and particularized."  Second, a "causal connection between the injury and the conduct complained of[.]"  And third, a likelihood "that the injury will be redressed by a

---

[3]    "In deciding motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), courts generally consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim."  <u>Lum v. Bank of Am.</u>, 361 F.3d 217, 221 n.3 (3d Cir. 2004).

favorable decision."

In re Horizon Healthcare Servs. Data Breach Litig., 846 F.3d
625, 633 (3d Cir. 2017) (alteration in original) (quoting Lujan
v. Defs. of Wildlife, 504 U.S. 555, 560, 561 (1992)).  "To
establish injury in fact, a plaintiff must show that he or she
suffered 'an invasion of a legally protected interest' that is
'concrete and particularized' and 'actual or imminent, not
conjectural or hypothetical.'"  Spokeo, Inc. v. Robins, 136 S.
Ct. 1540, 1548 (2016).

Defendants' standing argument focuses on proceedings before
the Bankruptcy Court in the District of Delaware, namely the
interpretation of the Confirmed Plan, a Motion to Reopen, and
the Bankruptcy Court's Order on that motion.  The Court must
first determine whether it can interpret these documents on
these motions to dismiss, or whether Defendants' standing
arguments are more appropriate for summary judgment.

It is clear to this Court that it can take judicial notice
of the Confirmed Plan and Motion to Reopen in the Bankruptcy
Court, as well as the subsequent Bankruptcy Court Order, in
considering the pending motions to dismiss.  The Third Circuit
has held that "a prior judicial opinion constitutes a public
record of which a court may take judicial notice."  M & M Store
Co. v. Pennsylvania, 388 F. App'x 156, 162 (3d Cir. 2010);
accord Gage v. Warren Twp. Comm. & Planning Bd. Members, 463 F.

14

App'x 68, 71 (3d Cir. 2012) ("The District Court may take judicial notice of the record from a previous court proceeding between the parties."); In re Able Labs. Sec. Litig., No. 05-2681, 2008 WL 1967509, at *17 n.21 (D.N.J. Mar. 24, 2008) ("[I]n reviewing a motion to dismiss, documents subject to judicial notice include matters of public record, orders, and items appearing in the record of the case."). The district court, however, "may do so on a motion to dismiss only to establish the existence of the opinion, and not for the truth of the facts asserted in the opinion." M & M Store, 388 F. App'x at 162.

Defendants' standing arguments ask this Court to interpret these documents, which is a separate inquiry. "Taking judicial notice of the existence of other proceedings does not convert a motion to dismiss into a motion for summary judgment as long as the court does not take judicial notice of those proceedings to find facts." In re Able Labs., 2008 WL 1967509, at *17 n.21; accord S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp., Ltd., 181 F.3d 410, 426 (3d Cir. 1999) ("[O]n a motion to dismiss, we may take judicial notice of another court's opinion – not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity."); Montgomery v. Beneficial Consumer Disc. Co., No. 04-2114, 2005 WL 497776, at *4 n.5 (E.D. Pa. 2005) ("The Third Circuit has cautioned that we may not take

15

judicial notice of a prior court opinion in order to establish
the truth of the adjudicative facts on which the opinion is
based.").

Plaintiffs argue Defendants' "argument is premature, as it
rests not simply on the existence of Bankruptcy Court's Order, a
public record, but on a contested interpretation of its meaning.
To the extent that there is a dispute regarding the significance
of the order, judicial notice and dismissal are not proper."
Plaintiffs cite In re Niaspan Antitrust Litigation, 42 F. Supp.
3d 735 (E.D. Pa. 2014) for that proposition, which states:
"Although a court may take judicial notice of court documents to
establish the fact of the litigation or of the filings
themselves, in this case, defendants ask the Court to find a
fact in dispute based on these documents . . . . This is a
plainly improper use of the doctrine."). Id. at 754.

The Court finds it can interpret the Bankruptcy Court's
Confirmed Plan and Order on these pending motions to dismiss.
In Montgomery, the Eastern District of Pennsylvania considered a
class settlement's Preliminary Approval Order and Final Approval
Order "to determine whether Plaintiff's action falls within the
scope of the claims released under the settlement." 2005 WL
497776, at *5 n.4. In Southern Cross, the Third Circuit
considered a judicial opinion "to see if it contradicts the
complaint's legal conclusions or factual claims." 181 F.3d at

16

427.  The Court finds its interpretation of the Confirmed Plan, Bankruptcy Order, and Motion to Reopen to be akin to the considerations in <u>Montgomery</u> and <u>Southern Cross</u>.  The Court finds that determining the scope of the Bankruptcy Court's Order is appropriate on a facial challenge to jurisdiction, as opposed to taking judicial notice of facts that formed the bases of an order or opinion, which is clearly inappropriate.

Prior to this lawsuit in the District of New Jersey, Plaintiffs were formed out of a Chapter 11 proceeding in the District of Delaware Bankruptcy Court.  The entity was used in part to enable patent litigation by FastShip, LLC against the United States.  After the bankruptcy case was closed, Plaintiffs moved to reopen the case on December 19, 2016 to, in part, transfer "Additional Litigation" to Plaintiffs.  The Bankruptcy Court granted the requested transfer.  The standing issue in this case concerns what was encompassed within the Chapter 11 proceeding and the subsequent transfer.

The scope of the Bankruptcy Court's Confirmed Plan and Order is clear to this Court.  The Confirmed Plan provides in Article IV(C):

> On the Effective Date, the Debtors shall transfer and shall be deemed to have irrevocably transferred to the Liquidating Trust, for and on behalf of the beneficiaries of the Liquidating Trust, with no reversionary interest in the Debtors, the Liquidating Trust Assets.  On the Effective Date the Debtors shall transfer and shall be deemed to have irrevocably

17

transferred to FastShip, LLC, with no reversionary
interest in the Debtors, the IP Litigation including all
attendant Claims and defenses.[4]

The Liquidating Trust assets are defined as synonymous with

the "Transferred Assets," Article I(B)(57), which are defined in

Article I(B)(79) as:

> (i) any and all Avoidance Actions and any products and
> proceeds thereof; (ii) the Causes of Action and any
> products or proceeds thereof; (iii) the units of
> FastShip, LLC owned by the Debtors and all other assets
> of the Debtors in existence on the Effective Date and
> any and all proceeds thereof, except for certain funds
> which may remain in the Debtors' Estates, at the
> discretion of the Debtors, in order to pay certain
> Administrative Claims or Professional Fee Claims
> incurred under the DIP Budget; or any other assets set
> forth in this Plan, specifically not transferred to the
> Liquidating Trust.  For avoidance of doubt, the
> Transferred Assets shall not include the IP Litigation.

The Court finds this alone transferred the breach of contract

and misappropriation of trade secrets claims to the Liquidating

Trust.

In the Motion to Reopen before the Bankruptcy Court, it was

stated that "during the course of the IP Litigation, the Trustee

---

[4]   The "IP Litigation" is defined in Article I(B)(49) as:

> [T]he litigation to be pursued by FastShip, LLC against
> the U.S. Government and perhaps others arising from the
> alleged infringement by the U.S. Government on the
> patents of Thornycroft, Giles & Co., Inc. which IP
> Litigation when transferred to FastShip, LLC will
> include a transfer as well of any defenses to any
> counterclaims which may be asserted by the government as
> well as any patents integral in the prosecution of the
> IP Litigation.

was informed that certain information came to light which may form the basis of additional litigation actions (the 'Additional Litigation') which, if successful, would provide additional proceeds for distribution to the Beneficiaries of the Liquidating Trust." It later stated: "The Additional Litigation which has been identified as possibly existing relates to the breach of certain confidentiality and non-disclosure agreements executed in favor of the Debtors relating to the patents and the resultant infringement alleged against the U.S. Government." In granting the Motion to Reopen, the Bankruptcy Court "ORDERED that the Additional Litigation, if same was not transferred to FastShip LLC on the Effective Date of the Confirmed Plan[,] is hereby transferred to FastShip LLC." The Bankruptcy Court itself did not define "Additional Litigation"; it is presumed the Court adopted the definition set forth in the Motion to Reopen.

Defendants focus on the definition of "Additional Litigation." For instance, Lockheed argues "only those claims that relate to FastShip, Inc.'s patents or any resulting infringement can be asserted" and that "[a]nything 'related to' the patents and the 'resulting infringement' is likewise public and cannot serve as the basis for a trade secret claim, or a breach of contract claim where the breach is based on the disclosure of confidential information."

Plaintiffs argue the underlying motion clearly states "that the new allegations relate to the breach of non-disclosure agreements."  Plaintiffs continue:

> [T]he sentence does not state that the current claims "are" infringement claims.  It states that they are "related" to the infringement claim against the U.S. Government.  The current claims are so related in the sense that (i) FastShip learned of the current claims in the context of the patent litigation, and (ii) both the patent litigation and the current claims arise from Lockheed's LCS Program.  Lockheed cannot twist the latter half of a single sentence in the January 2017 motion to undermine the Bankruptcy Court's order.

The Court must view the Bankruptcy Court's Order in the light most favorable to Plaintiffs.  The Court considers the causes of action in this matter to be encompassed within the definition of "Additional Litigation," as the definition advanced in the Motion to Reopen specifically referenced the NDAs, and the Court finds a sufficient relationship between these claims and the patent litigation.  The Court finds the Bankruptcy Court's January 5, 2017 Order transferred the causes of action in this case to FastShip, LLC, in addition to the earlier transfer to the Liquidating Trust.  The Court finds both Plaintiffs have standing upon consideration of this facial attack: the Liquidating Trust through the Confirmed Plan and FastShip, LLC through the Order on the Motion to Reopen.[5]

---

[5]    G&C argues "the Bankruptcy Court lacked the authority to enter the Order, at least as it pertains to G&C" under the Constitution.  G&C further argues that, if the Bankruptcy Court

Defendants further argue Plaintiffs lack standing because they were not parties to the 2003 NDAs and the 2003 NDAs could not be assigned to them.  Defendants further argue the 2003 NDAs were not in fact assigned to Plaintiffs by the Bankruptcy Court.  This issue appears to require the Court to determine whether the 2003 NDAs were executory or non-executory and whether they were encompassed in the Bankruptcy Court's Order.  It is similarly argued that Plaintiffs do not own the alleged Trade Secrets and that they were never transferred to Plaintiffs.

The Court at this juncture need not resolve whether or not it was required that the underlying NDAs and Trade Secrets

---

had constitutional authority, the Order should be void "[b]ecause G&C was not afforded basic due process in the form of notice and an opportunity to be heard."  G&C also argues it is "questionable that the Motion even constituted a 'core' proceeding" in arguing the Bankruptcy Court may have lacked authority to enter the Order on the Motion to Reopen.  These are all arguments that must be made before the Bankruptcy Court or on an appeal to the District of Delaware.  The Court will not rule on the authority of the Delaware Bankruptcy Court or on the validity of its Order.  The Court expresses no opinion on any of these issues.  In any event, even if the Bankruptcy Court's Order were invalid, this action would proceed with the Liquidating Trust as the sole plaintiff, as the Court finds the Confirmed Plan transferred the causes of action to the Liquidating Trust.

Lockheed, in its reply, also appears to argue "Plaintiffs must explain how or why they continue to maintain any FastShip, Inc. assets" since the Liquidating Trust "was obligated 'to reduce to cash or otherwise liquidate' all of FastShip, Inc.'s assets."  The Court sees no obligation for Plaintiffs to so explain this before this Court.  Plaintiffs plead ownership of all FastShip, Inc. assets, and that is sufficient for these motions to dismiss.

themselves were assigned to Plaintiffs, in addition to the causes of action, as Defendants' assignment arguments are inappropriate on a motion to dismiss.  Plaintiffs' Second Amended Complaint pleads that FastShip, LLC is "the assignee of the claims at issue in this suit."  It further pleads that the Liquidating Trust "is also the assignee of certain assets and rights of FastShip, Inc. . . . pursuant to the terms of a confirmed plan of reorganization."  At this motion to dismiss stage, the Court must assume this to be true.  The Court finds any further inquiry into the assignability of these claims must be argued on motion for summary judgment.[6]

The Court finds standing here under this facial attack. Out of an abundance of caution, however, this Court will allow any party to submit a letter request for a stay of this case to file a motion to reopen with the Delaware Bankruptcy Court to seek an order interpreting its January 2017 Order with reference to the issues that will continue before the Court in this case, as well as for G&C to advance its arguments that the Bankruptcy Court lacked the authority to enter its decision, G&C's arguments that the Bankruptcy Court's Order is invalid, and Lockheed's argument that the Liquidating Trust did not perform

---

[6]    Defendants make these arguments pursuant to both their Rule 12(b)(1) standing argument and pursuant to their Rule 12(b)(6) failure to state a claim argument.

its obligations under the Confirmed Plan.  The Court proceeds in its analysis finding, on the record now before it, that Plaintiffs have standing to pursue their causes of action in this matter.

**B. Personal Jurisdiction**

G&C argues this Court does not have personal jurisdiction over it and asks for dismissal pursuant to Rule 12(b)(2).  The Court finds Plaintiffs have advanced a prima facie case of personal jurisdiction over G&C.

**1. Rule 12(b)(2) Standard**

"To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff bears the burden of establishing the court's jurisdiction over the moving defendants."  Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 97 (3d Cir. 2004) (citing Pinker v. Roche Holdings, Ltd., 292 F.3d 361, 368 (3d Cir. 2002)); accord Dayhoff Inc. v. H.J. Heinz Co., 86 F.3d 1287, 1302 (3d Cir. 1996) ("[O]nce a defendant has raised a jurisdictional defense, a plaintiff bears the burden of proving by affidavits or other competent evidence that jurisdiction is proper." (citing Narco Avionics, Inc. v. Sportsman's Mkt., Inc., 792 F. Supp. 398, 402 (E.D. Pa. 1992))).  "However, when the court does not hold an evidentiary hearing on the motion to dismiss, the plaintiff need only establish a prima facie case of personal jurisdiction and the plaintiff is entitled to have its

allegations taken as true and all factual disputes drawn in its favor." Miller Yacht Sales, 384 F.3d at 97 (citing Pinker, 292 F.3d at 368).

While a plaintiff need only establish a prima facie case of personal jurisdiction, "a plaintiff may not 'rely on the bare pleadings alone' in order to withstand a motion to dismiss for lack of personal jurisdiction." Demetro v. Nat'l Ass'n of Bunco Investigations, No. 14-6521, 2017 WL 3923290, at *6 (D.N.J. Sept. 7, 2017). "Once the motion is made, plaintiff must respond with actual proofs, not mere allegations." Id. (quoting Patterson v. FBI, 893 F.2d 595, 604 (3d Cir. 1990)).

**2. Personal Jurisdiction over G&C**

A defendant is subject to the jurisdiction of a United States District Court if the defendant "is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." Fed. R. Civ. P. 4(k)(1)(A). "A federal court sitting in New Jersey has jurisdiction over parties to the extent provided under New Jersey state law." Miller Yacht Sales, 384 F.3d at 96. "New Jersey's long-arm statute provides for jurisdiction coextensive with the due process requirements of the United States Constitution." Id.

> [D]ue process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain

24

minimum contacts with it such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."

Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)).

A defendant establishes minimum contacts by "purposefully avail[ing] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Asahi Metal Indus. Co. v. Superior Court of Cal., 480 U.S. 102, 109 (1987) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985)). This "purposeful availment" requirement ensures that the defendant could reasonably anticipate being haled into court in the forum and is not haled into a forum as a result of "random," "fortuitous," or "attenuated" contacts with the forum state. See World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980); see also Burger King Corp., 471 U.S. at 472, 475.

In determining whether a defendant's contacts with a forum state are sufficient to allow for personal jurisdiction over that party, a court must consider whether such contacts are related to or arise out of the cause of action at issue in the particular case. A court may exercise specific personal jurisdiction over a defendant where the cause of action is related to or arises out of activities by the defendant that took place within the forum state. Helicopteros Nacionales de

Colombia, S.A. v. Hall, 466 U.S. 408, 414 n.8 (1984).  If the
cause of action has no relationship to a defendant's contacts
with a forum state, the court may nonetheless exercise general
jurisdiction if the defendant has conducted "continuous and
systematic" business activity in the forum state.  Id. at 416.

 "Once it has been decided that a defendant purposefully
established minimum contacts within the forum State, these
contacts may be considered in light of other factors to
determine whether the assertion of personal jurisdiction would
comport with 'fair play and substantial justice.'"  Burger King
Corp., 471 U.S. at 477 (quoting Int'l Shoe, 326 U.S. at 320).
Courts "may evaluate 'the burden on the defendant,' 'the forum
State's interest in adjudicating the dispute,' 'the plaintiff's
interest in obtaining convenient and effective relief,' 'the
interstate judicial system's interest in obtaining the most
efficient resolution of controversies,' and the 'shared interest
of the several States in furthering fundamental substantive
social policies.'"  Id. at 476-77 (quoting World-Wide
Volkswagen, 444 U.S. at 292).  "These considerations sometimes
serve to establish the reasonableness of jurisdiction upon a
lesser showing of minimum contacts than would otherwise be
required."  Id. at 477.  "[W]here a defendant who purposefully
has directed his activities at forum residents seeks to defeat
jurisdiction, he must present a compelling case that the

presence of some other considerations would render jurisdiction

unreasonable." Id.

Plaintiffs and G&C appear to agree that general personal

jurisdiction does not exist here.  The Court agrees.

Accordingly, the Court considers whether specific personal

jurisdiction exists.  As identified by Plaintiffs, the following

meetings took place with G&C in New Jersey:

- A January 22, 2004 to January 23, 2004 meeting in Moorestown, New Jersey to discuss the LCS Preliminary Design Review.  [Exhibit F].

- A September 13, 2004 to September 14, 2004 meeting in Moorestown, New Jersey to discuss the LCS Initial Critical Design Review. [Exhibit K].

- A September 14, 2004 meeting in Moorestown, New Jersey to discuss the LCS Shock Hardening Certification Plan. [Exhibit J].

- A September 14, 2004 meeting in Moorestown, New Jersey to discuss the LCS Initial Critical Design Review, Ship Systems Splinter.  [Exhibit L].

G&C argues these meetings are irrelevant.  G&C argues Plaintiffs

have not alleged that G&C ever met with FastShip, Inc. in New

Jersey, that G&C ever received FastShip, Inc.'s Trade Secrets in

New Jersey, or that G&C ever disclosed FastShip, Inc.'s Trade

Secrets in New Jersey.  G&C argues the meetings identified by

Plaintiffs do not "mention FastShip Inc. or reference any

discussion or use of the alleged trade secret SSPA tank testing

or any other purported trade secrets or 'bad facts' as alleged

by Plaintiffs."  G&C thus argues "Plaintiffs' causes of action

d[o] not arise out of G&C's meetings in New Jersey."

The gravamen of Plaintiffs' Second Amended Complaint is

that "Lockheed and Gibbs & Cox used FastShip's Trade Secrets to

perform the preliminary design contract and to win and perform

the subsequent aspects of the LCS Program."  It is clear to this

Court that the New Jersey meetings between Lockheed and G&C were

related to performing the preliminary design contract and other

aspects of the LCS Program.  Taking Plaintiffs' allegations as

true, as this Court must at this stage, the Court finds that if

the performance in the LCS Program involved breaches of the NDAs

between Defendants and Plaintiffs or resulted in a

misappropriation of trade secrets, meetings between Defendants

in furtherance of the LCS Program performance are relevant

contacts and G&C should reasonably expect to be haled into court

in New Jersey.  The Court hardly finds these contacts to be

"random," "fortuitous," or "attenuated."  See World-Wide

Volkswagen, 444 U.S. at 297.  The Court finds these contacts

sufficient at this stage.

The Court further finds that exercising personal

jurisdiction over G&C comports with fair play and substantial

justice.  The Court finds no compelling reason why exercising

personal jurisdiction over G&C would be unfair or unjust.

Further, as this case will be heard against Lockheed in the

28

District of New Jersey,[7] the Court finds exercising personal jurisdiction over G&C comports with "the interstate judicial system's interest in obtaining the most efficient resolution of controversies."  Burger King Corp., 471 U.S. at 477 (quoting World-Wide Volkswagen, 444 U.S. at 292).  The Court finds Plaintiffs have presented a prima facie case of personal jurisdiction over G&C.

**C. Venue**

G&C also argues venue is improper, which is grounds for dismissal under Rule 12(b)(3).  Venue is governed by 28 U.S.C. § 1391(b), which provides that venue is proper in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

Defendants are both corporations.  "[A]n entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated, shall be deemed to reside, if

---

[7]   The 2003 NDA between FastShip, Inc. and Lockheed states that "[v]enue for any dispute shall be New Jersey."

a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question . . . ." Id. § 1391(c). As previously determined, the Court has personal jurisdiction over G&C. It is not disputed that the Court has personal jurisdiction over Lockheed. As both Defendants reside in the District of New Jersey for the purpose of determining venue, the Court finds venue is proper in the District of New Jersey.

## III.

Defendants advance several bases for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

### A. Rule 12(b)(6) Standard

When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff. Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005). It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a

plaintiff's obligation to provide the 'grounds' of his

'entitle[ment] to relief' requires more than labels and

conclusions, and a formulaic recitation of the elements of a

cause of action will not do . . . ." Bell Atl. Corp. v.

Twombly, 550 U.S. 544, 555 (2007) (alteration in original)

(citations omitted) (first citing Conley v. Gibson, 355 U.S. 41,

47 (1957); Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.,

40 F.3d 247, 251 (7th Cir. 1994); and then citing Papasan v.

Allain, 478 U.S. 265, 286 (1986)).

> To determine the sufficiency of a complaint, a
> court must take three steps.  First, the court must
> "tak[e] note of the elements a plaintiff must plead to
> state a claim."   Second, the court should identify
> allegations that, "because they are no more than
> conclusions, are not entitled to the assumption of
> truth."   Third, "whe[n] there are well-pleaded factual
> allegations, a court should assume their veracity and
> then determine whether they plausibly give rise to an
> entitlement for relief."

Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011) (alterations

in original) (citations omitted) (quoting Ashcroft v. Iqbal, 556

U.S. 662, 664, 675, 679 (2009)).

A district court, in weighing a motion to dismiss, asks

"not whether a plaintiff will ultimately prevail but whether the

claimant is entitled to offer evidence to support the claim."

Twombly, 550 U.S. at 563 n.8 (quoting Scheuer v. Rhoades, 416

U.S. 232, 236 (1974)); see also Iqbal, 556 U.S. at 684 ("Our

decision in Twombly expounded the pleading standard for 'all

civil actions' . . . ."); <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210 (3d Cir. 2009) ("<u>Iqbal</u> . . . provides the final nail in the coffin for the 'no set of facts' standard that applied to federal complaints before <u>Twombly</u>."). "A motion to dismiss should be granted if the plaintiff is unable to plead 'enough facts to state a claim to relief that is plausible on its face.'" <u>Malleus</u>, 641 F.3d at 563 (quoting <u>Twombly</u>, 550 U.S. at 570).

## B. Statute of Limitations

The breach of contract and trade misappropriation claims against Lockheed are governed by the applicable statute of limitations under New Jersey law. New Jersey applies a six-year statute of limitations to breach of contract claims. N.J.S.A. 2A:14-1 ("Every action at law . . . for recovery upon a contractual claim or liability . . . shall be commenced within 6 years next after the cause of any such action shall have accrued."). A six-year statute of limitations also applies to the misappropriation of trade secrets claim.[8]

---

[8]   N.J.S.A. 56:15-8 was adopted in 2012. N.J.S.A. 56:15-8 ("An action for misappropriation shall be brought within three years after the misappropriation is discovered or by the exercise of reasonable diligence should have been discovered. For the purposes of this section, a continuing misappropriation constitutes a single claim."). Section 10 of L. 2011, c. 161 provides: "This act shall take effect immediately, and does not apply to misappropriation occurring prior to the effective date. With respect to a continuing misappropriation that began prior to the effective date, the act also does not apply to the

G&C and Plaintiffs dispute the law that applies to the breach of contract and misappropriation of trade secrets claims against G&C.  Plaintiffs argue they are governed by New Jersey law, whereas G&C argues they are governed by Delaware law. Under Delaware law, the statute of limitations for contract actions is three years.  Del. Code Ann. tit. 10, § 8106; accord Brooks-McCollum v. Emerald Ridge Serv. Corp., 563 F. App'x 144, 146-47 (3d Cir. 2014).  The statute of limitations for a misappropriation of trade secrets claim is also three years. Del. Code Ann. tit. 6, § 2006 ("An action for misappropriation must be brought within 3 years after the misappropriation is discovered or by the exercise of reasonable diligence should have been discovered.  For the purposes of this section, a continuing misappropriation constitutes a single claim."); Gavin v. Club Holdings, LLC, No. 15-175, 2016 WL 1298964, at *8 (D. Del. Mar. 31, 2016).  A clear conflict of laws exists here.[9]

_____

continuing misappropriation that occurs after the effective date."  As Plaintiffs allege the misappropriation began prior to the effective date of N.J.S.A. 56:15-8, the Court will not apply the three-year statute of limitations supplied in N.J.S.A. 56:15-8.

[9]    The G&C NDA states: "This Agreement shall be governed by and interpreted in accordance with the laws of the United States of American and the State of Delaware, except in regards to the provisions governing choice of laws.  The parties agree to submit any dispute under this Agreement to a court of competent jurisdiction."  "Choice of law provisions in contracts do not apply to statutes of limitations, unless the reference is express."  Gluck v. Unisys Corp., 960 F.2d 1168, 1179-80 (3d

Plaintiffs plead they did not know of their current claims until "discovery was completed and reviewed in the patent case . . . which was not completed until less than three years prior to the filing of the complaint in this suit." Plaintiffs make the following allegations in their Second Amended Complaint:

> Specifically, on information and belief, Defendants conducted extremely limited tank testing prior to constructing the LCS-1 and -3 vessels, including no propulsion testing at all on LCS-1. The U.S. Navy would not have approved the construction of the LCS vessels without such testing, particularly given the use of a SPMH design that the Navy had indicated was not appropriate for vessels of the size used in the LCS Program. FastShip only learned of that lack of testing by Defendants after discovery was completed and reviewed in the patent case described below, which was not completed until less than three years prior to the filing of the complaint in this suit. Given the confidential and classified nature of the LCS Program, prior to that point, FastShip had no ability to discover that lack of testing, had no other basis for suspecting that Defendants had improperly used FastShip's Trade Secrets, and had no basis for asserting a breach of contract, misappropriation of trade secrets, or other claim against Defendants.

The Court finds it cannot resolve this issue on a motion to dismiss. Under either the Delaware or the New Jersey statute of limitations, Plaintiffs rely on the discovery rule, which

_____

Cir. 1992); accord Jackson v. Chevron Corp., No. 05-3590, 2006 WL 231595, at *4 n.6 (D.N.J. Jan. 30, 2006) ("The LTD Plan contains a provision stating that the contract is governed by California law. . . . No mention, however, is made in the clause dictating the application of California's statute of limitations. Accordingly, the choice of law clause is not controlling.").

implicates factual matters outside the pleadings and beyond the scope of this motion to dismiss and requires the Court to draw conclusions outside the scope of the Court's inquiry on a 12(b)(6) motion.  See, e.g., TL of Fla., Inc. v. Terex Corp., 54 F. Supp. 3d 320, 329 (D. Del. 2014) ("Frequently, determining whether the statute of limitations has been tolled pursuant to the 'discovery rule' or due to fraudulent concealment requires a factual inquiry not amenable to resolution on a motion to dismiss.").

**C. No Claim for Relief Exists**

As to both causes of action, Lockheed argues Plaintiffs' claims are "implausible": "Plaintiffs expressly admit that they have no idea whether or not Lockheed Martin actually used FastShip, Inc.'s information.  Instead, they can only argue that the facts 'suggest' a violation, but this suggestion comes from an alleged 'lack' of information. . . .  [S]uch speculation and guess work is insufficient to state a claim for relief." (citation omitted).  Lockheed argues:

> Plaintiffs have provided no plausible factual basis for
> disputing the multiple assertions that Plaintiffs' data
> was not improperly used other than the fact that they
> did not find any information in the patent case.  The
> facts as pled do not satisfy the Twombly standard;
> Plaintiffs are merely speculating about one possible
> scenario when the actual facts suggest another more
> plausible accounting of Lockheed Martin's activities.

It is improper at this juncture to determine the "more plausible" account of what occurred.  Rather, the only question before this Court at the motion to dismiss stage is whether Plaintiffs have proffered sufficient factual allegations such that the Court is convinced a plausible claim for relief exists. See, e.g., Houck v. Substitute Tr. Servs., 791 F.3d 473, 484 (4th Cir. 2015) ("If her explanation is plausible, the complaint survives a motion to dismiss under Rule 12(b)(6), regardless of whether there is a more plausible alternative explanation.  The district court's inquiry into whether an alternative explanation was more probable undermined the well-established plausibility standard."); Anderson News, L.L.C. v. Am. Media, Inc., 680 F.3d 162, 185 (2d Cir. 2012) ("A court ruling on [a 12(b)(6)] motion may not properly dismiss a complaint that states a plausible version of the events merely because the court finds a different version more plausible.").  The Court now considers whether Plaintiffs have proved that their breach of contract and misappropriation of trade secrets claims are plausible.

### 1. Breach of Contract

To prevail on a breach of contract claim under New Jersey law, a plaintiff must establish three elements: (1) the existence of a valid contract between the parties; (2) failure of the defendant to perform its obligations under the contract; and (3) causal relationship between the breach and the plaintiff's alleged damages.

36

Sheet Metal Workers Int'l Ass'n Local Union No. 27 v. E.P. Donnelly, Inc., 737 F.3d 879, 900 (3d Cir. 2013). "In Delaware, the elements of a breach of contract claim are: '[1] the existence of the contract, whether express or implied; [2] the breach of an obligation imposed by that contract; and [3] the resultant damage to the plaintiff.'" Avaya Inc., RP v. Telecom Labs., Inc., 838 F.3d 354, 389 (3d Cir. 2016) (quoting VLIW Tech., LLC v. Hewlett-Packard Co., 840 A.2d 606, 612 (Del. 2003)).

Defendants argue there is not a valid contract between the parties, as FastShip, LLC and the Liquidating Trust were not parties to the 2003 NDAs. As discussed with reference to standing, this issue cannot be adjudicated at the motion to dismiss stage in this case. As to breach and damages, Lockheed argues the use of Plaintiffs' information "is explicitly permitted by the contracts Lockheed Martin allegedly breached." Lockheed argues the 2003 NDA permitted it to use Plaintiffs' information to win the LCS contract and to perform on the LCS contract and thus there was no breach. G&C makes this same argument.

Section 2 of the 2003 NDA with Lockheed states:

The proprietary information to be disclosed under this Agreement involves potential business opportunities to program management and systems integration technical support for high speed cargo ships as well as use of FastShip technology on the Littoral Combat Ship. Use of

> information disclosed under this Agreement is not
> permitted except for purposes of the business
> relationship regarding the potential pursuit of specific
> consulting opportunities and for proposal submission to
> a potential customer.[10]

Section 5(b) of the 2003 NDA with Lockheed later states: "Any

protected information provided by one party to the other shall

be used only in furtherance of the purposes described in Section

2 of this Agreement."  Section 5(c) states: "Proprietary

information may not be disclosed to any third party without the

express written consent of the disclosing party notwithstanding

the provisions of Article 2 herein."

Section 3 of the G&C NDA provides:

> The Proprietary Information is being provided for the
> sole purpose of allowing the recipient of such
> information to evaluate the potential business
> opportunity being discussed.  At no time shall the
> recipient of any Proprietary Information use or allow
> the use of such information for any other purpose without
> the prior written consent of the party that has disclosed
> such information.  In no event shall the recipient of
> any Proprietary Information use such information for its
> own commercial or financial advantage or for the
> commercial or financial advantage of any other person,
> firm, partnership, corporation or other entity without
> the prior written consent of the party that has disclosed
> such information.

---

[10]   The Court finds this document, and the 2003 NDA with G&C,
to be integral to Plaintiffs' Second Amended Complaint and thus
considers it in deciding this motion to dismiss.  See Lum, 361
F.3d at 221 n.3 ("In deciding motions to dismiss pursuant to
Federal Rule of Civil Procedure 12(b)(6), courts generally
consider . . . documents that form the basis of a claim.").  The
contract at issue is without a doubt the basis of the breach of
contract claim.

The Court rejects Defendants' arguments that the Court should dismiss this case because the NDAs provide them with an unencumbered ability to disclose Plaintiffs' information. Reading Plaintiffs' Second Amended Complaint and the 2003 NDAs in the light most favorable to Plaintiffs, the Court finds sufficient evidence that such disclosures, if made, would have been in violation of the 2003 NDAs.  Plaintiffs have sufficiently pleaded a breach and resultant damages.

### 2. Misappropriation of Trade Secrets

In New Jersey, to state a claim for misappropriation of trade secrets, a plaintiff must establish the following elements: "(1) a trade secret exists; (2) the information comprising the trade secret was communicated in confidence by plaintiff to the [defendant]; (3) the secret information was disclosed by that [defendant] and in breach of that confidence; (4) the secret information was acquired by a competitor with knowledge of the [defendant's] breach of confidence; (5) the secret information was used by the competitor to the detriment of plaintiff; and (6) the plaintiff took precautions to maintain the secrecy of the trade secret."

NXIVM Corp. v. Estate of Sutton, No. 06-1051, 2013 WL 6795217, at *5 (D.N.J. Dec. 19, 2013) (quoting Jurista v. Amerinox Processing, Inc., 492 B.R. 707, 771 (D.N.J. 2013)).[11] The test is as follows under Delaware law:

---

[11]    The Court notes that Plaintiffs provide the following test for a misappropriation of trade secrets claim: "(i) a trade secret exists; (ii) that plaintiff took reasonable precautions to maintain the secrecy of the information; and (iii) the defendant used the secret information to the detriment of the plaintiff."  Plaintiffs accurately cite Oswell v. Morgan Stanley

The determination of whether a plaintiff has set forth a prima facie trade secret misappropriation claim under the [Delaware Uniform Trade Secrets Act] implicates the following inquiries: "(1) Does a trade secret exist, i.e., have the statutory elements – commercial utility arising from secrecy and reasonable steps to maintain secrecy – been shown; (2) has the secret been communicated by plaintiff to the defendant; (3) was such communication pursuant to an express or implied understanding that the secrecy of the matter would be respected; and (4) has the secret information been improperly (e.g. in breach of the understanding) used or disclosed by the defendant to the injury of the plaintiff?"

Accenture Global Servs. GMBH v. Guidewire Software, Inc., 581 F. Supp. 2d 654, 662 (D. Del. 2008) (quoting Savor, Inc. v. FMR Corp., No. 10-249, 2004 WL 1965869, at *5 (Del. Super. July 15, 2004)).[12]

Lockheed argues "Plaintiffs have not identified the trade secrets allegedly misappropriated with enough specificity and particularity so as to allow Lockheed Martin (and the Court) to determine what exactly Plaintiffs claim is a trade secret." However, "[a] misappropriation of trade secrets claim is not subject to a heightened pleading requirement." IDT Corp. v.

----

Dean Witter & Co., Inc., No. 06-5814, 2007 WL 1756027 (D.N.J. 2007) for this test. Oswell, in turn, cites to Rycoline Products, Inc. v. Walsh, 756 A.2d 1047 (N.J. Super. Ct. App. Div. 2000), which supplies the same six-prong test quoted by the Court above. The Court is unable to determine why Oswell supplied a test that differed from Rycoline. The Court will follow Rycoline here.

[12]   "Trade secret misappropriation claims are governed by the Delaware Uniform Trade Secrets Act . . . ." Accenture Global, 581 F. Supp. 2d at 662.

Unlimited Recharge, Inc., No. 11-4992, 2012 WL 4050298, at *7
(D.N.J. Sept. 13, 2012).  G&C argues similarly, relying on Dow
Chemical Canada, Inc. v. HRD Corp., 909 F. Supp. 2d 340 (D. Del.
2012), which states: "To meet the first element of the test, HRD
must show the existence of a trade secret with 'reasonable
degree of precision and specificity . . . such that a reasonable
jury could find that plaintiff established each statutory
element of a trade secret.'"  Id. at 346 (no citation).
However, Dow Chemical was considering a summary judgment motion
relating to a misappropriation of trade secrets claim, not a
motion to dismiss as the Court is here.

Plaintiffs' Second Amended Complaint identifies the Trade
Secrets as the "testing and data in the 1980's and 1990's,"
specifically focusing on tank testing.  The Court finds this
sufficiently pleaded.  The Court finds the other elements of
this cause of action to be sufficiently pleaded under both New
Jersey or Delaware law, largely for the same reasons as
discussed with reference to the breach of contract claim.

The Court finds Plaintiffs pleaded that FastShip, Inc. took
reasonable steps to protect the Trade Secrets in pleading that
the 2003 NDAs and confidentiality agreements were executed.  The
Second Amended Complaint also clearly pleads that such Trade
Secrets were communicated to G&C and Lockheed pursuant to the
2003 NDAs, and thus under an understanding that the secrecy

41

would be respected.  As Plaintiffs plead FastShip, Inc. was left out from the LCS Program, despite its Trade Secrets being used, Plaintiffs sufficiently plead injury.  The Court finds a plausible misappropriation of trade secrets claim.

In arguing that some of Plaintiffs' information cannot constitute trade secrets, G&C relies on documents outside the pleadings and which the Court determines it cannot consider in deciding this motion to dismiss.  The argument that potential Trade Secrets were previously published in these documents must be brought pursuant to a motion for summary judgment.  The same goes for G&C's argument that FastShip, Inc. failed to mark certain materials as confidential, thus destroying a trade secret.[13]  The misappropriation of trade secrets claim will proceed.

---

[13]   G&C argues the Court should bar Plaintiffs' claims through the doctrine of estoppel, arguing Plaintiffs failed to disclose all their assets, in this case the Trade Secrets, on its bankruptcy schedules.  G&C's estoppel argument is also inappropriate on this motion to dismiss.  Preliminarily, the Court does not appear to have been provided with these bankruptcy schedules.  The Court further finds it could not take judicial notice of such schedules even if they had been provided to the Court.  Moreover, analysis of this argument is tied in with the issue of when Plaintiffs realized their breach of contract and misappropriation of trade secrets claims.

**IV.**

The Court will deny both Motions to Dismiss.  Plaintiffs request an initial summary judgment phase limited to the statute of limitations question.  The Court finds this the most prudent way to proceed.  The Court will direct the parties to confer and contact Magistrate Judge Williams's chambers to set a discovery schedule and a dispositive motion deadline on the limited statute of limitations issue.  Initial discovery and any resulting summary judgment motions will be confined to the statute of limitations issue.

An appropriate Order will be entered.


Date: <u> June 25, 2018 </u>          <u> s/ Noel L. Hillman </u>
At Camden, New Jersey          NOEL L. HILLMAN, U.S.D.J.