Liza M. Walsh
Christopher M. Hemrick
WALSH PIZZI O'REILLY
FALANGA LLP
One Riverfront Plaza
1037 Raymond Boulevard, Suite 600
Newark, NJ 07102
Phone: (973) 757-1100

Mark Lichtenstein
CROWELL & MORING LLP
590 Madison Ave., 20th Floor
New York, NY 10022
Phone: (212) 223-4000

Pasquale A. Razzano (*pro hac vice*)
Douglas Sharrott
Josh Calabro (*pro hac vice*)
VENABLE LLP
1290 Avenue of the Americas
New York, NY 10104
Phone: (212) 218-2100

Michael J. Songer (*pro hac vice*)
Astor H.L. Heaven (*pro hac vice*)
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC 20004
Phone: (202) 624-2500

*Counsel for Defendant*
*Gibbs & Cox Inc.*

*Counsel for Defendant*
*Lockheed Martin Corporation*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| FASTSHIP, LLC, and THE LIQUIDATING TRUST OF FASTSHIP INC., ET AL., <br><br> PLAINTIFFS, <br><br> v. <br><br> LOCKHEED MARTIN CORPORATION, and GIBBS & COX, INC., <br><br> DEFENDANTS. | Civil Action No. 17-cv-02919 (NLH)(KMW) <br><br> **FILED UNDER SEAL** <br><br> **BRIEF IN SUPPORT OF DEFENDANTS' APPEAL OF ORDER OF MAGISTRATE JUDGE PURSUANT TO FED. R. CIV. P. 72 AND L. CIV. R. 72.1(c)** <br><br> **Return Date: January 7, 2019** <br><br> *Electronically Filed* <br><br> ***Oral Argument Requested*** |

## **TABLE OF CONTENTS**

I.    Introduction ...................................................................................................1

II.   Background ...................................................................................................3

      A.    Factual Background ............................................................................3

      B.    Procedural Background ......................................................................7

III.  Legal Standard .............................................................................................9

IV.   Argument ......................................................................................................9

      A.    The November 14th Order Failed to Address Two Key Disputes ..........9

            1.    Plaintiffs' Privilege Log Lists Documents That, on Their
                  Face, Are Not Privileged ........................................................10

            2.    Plaintiffs Explicitly Waived Privilege ......................................11

      B.    The Magistrate Judge's Ruling on Implied Waiver Is Contrary to
            Law. .................................................................................................13

            1.    Plaintiffs Implicitly Waived Privilege. .....................................13

            2.    *Rhone-Poulenc* Is Inapplicable. .................................................18

            3.    Even under *Rhone-Poulenc*, Plaintiffs have Waived the
                  Privilege. ...............................................................................20

      C.    Work Product Protection Does Not Apply. .........................................24

            1.    Plaintiffs Did Not Even Attempt to Carry Their Burden. ...........24

            2.    At a Minimum, the Court Should Conduct an *In-Camera*
                  Review. ..................................................................................25

V.    Conclusion ..................................................................................................27

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Amerestate Holdings, LLC v. CBRE, Inc.*,
  No. A-2416-17T3, 2018 N.J. Super. Unpub. LEXIS 2025
  (N.J. Super. Ct. App. Div. Sep. 4, 2018) ...............................................................19

*Blystra v. Fiber Tech Grp., Inc.*,
  407 F. Supp. 2d 636 (D.N.J. 2005) ....................................................................3, 4

*Bumgarner v. Hart*,
  No. 05-3900, 2007 WL 38700 (D.N.J. Jan. 4, 2007) .............................................11

*Ciba-Geigy Corp. v. Sandoz Ltd.*,
  916 F. Supp. 404 (D.N.J. 1995) .............................................................................13

*Conoco, Inc. v. United States Dep't of Justice*,
  687 F.2d 724 (3d Cir. 1982) ...................................................................................24

*Darius v. City of Boston*,
  741 N.E.2d 52 (Mass. Sup. Ct. 2001) ...............................................................16, 17

*Doe v. Banos*,
  966 F.Supp.2d 477 (D.N.J. 2013) ..........................................................................19

*Doe v. Hartford Life & Accident Ins. Co.*,
  237 F.R.D. 545 (D.N.J. 2006) .................................................................................9

*Elat v. Emandopngoubene*,
  No. PWG-11-2931, 2013 U.S. Dist. LEXIS 37875 (D. Md. Mar. 15, 2013) ...................16, 23

*In re Gabapentin Patent Litig.*,
  214 F.R.D. 178 (D.N.J. 2003) ................................................................................10

*Glenmede Trust Co. v. Thompson*,
  56 F.3d 476 (3d Cir. 1995) .....................................................................................18

*Graco, Inc. v. PMC Glob., Inc.*,
  No. 08-1304 (FLW), 2011 U.S. Dist. LEXIS 14717 (D.N.J. Feb. 14, 2011) ........13, 14, 15, 19

*In re Grand Jury Subpoena Issued to Galasso*,
  913 A.2d 78 (N.J. Super. Ct. App. Div. 2006) ..........................................12, 13, 15

*Grunstein v. Silva*,
  No. 3932-VCN, 2012 Del. Ch. LEXIS 267 (Del. Ct. Ch. Nov. 20, 2012) ..............19

*Harding v. Dana Transport, Inc.*,
914 F.Supp. 1084 (D.N.J. 1996) ...................................................................18, 24

*Hearn v. Rhay*,
68 F.R.D. 574 (E.D. Wash. 1975) ............................................................14, 17, 19

*In re Kozlov*,
398 A.2d 882 (N.J. Sup. Ct. 1979)......................................................................19

*Lama v. Preskill*,
818 N.E.2d 443 (Ill. App. Ct. 2004) ...................................................................14

*Landmark Screens, Ltd. Liab. Co. v. Morgan, Lewis & Bockius Ltd. Liab. P'ship*,
No. C08-02581 JF (HRL), 2009 U.S. Dist. LEXIS 102579
(N.D. Cal. Oct. 21, 2009)....................................................................................14

*Leesona Corp. v. United States*,
599 F.2d 958 (Ct. Cl. 1979) ...............................................................................20

*Livingstone v. N. Belle Vernon Borough*,
91 F.3d 515 (3d Cir. 1996).......................................................................... *passim*

*Margulis v. Hertz Corp.*,
No. 14-1209 (JMV), 2017 U.S. Dist. LEXIS 28311 (D.N.J. Feb. 28, 2017)...............10, 11, 12

*Marks v. Struble*,
347 F.Supp.2d 136 (D.N.J. 2004) .........................................................................9

*McCarthy v. Slade Assocs., Inc.*,
972 N.E.2d 1037 (Mass. Sup. Ct. 2012) ...............................................................17

*In re Neurontin Antitrust Litigation*,
801 F.Supp.2d 304 (D.N.J. 2011) .......................................................................26

*Outpost Solar, LLC v. Henry, Henry & Underwood, P.C.*,
No. M2016-00297-COA-R9-CV, 2017 Tenn. App. LEXIS 841
(Tenn. Ct. App. Dec. 29, 2017)...........................................................................14

*In re Pfohl Bros. Landfill Litig.*,
175 F.R.D. 13 (W.D.N.Y. 1997).........................................................................25

*Rhone-Poulenc Rorer v. Home Indem. Co.*,
32 F.3d 851 (3d Cir. 1994)......................................................................... *passim*

*Seaman v. Sedgwick LLP*,
No. 11-0664, 2014 WL 3738055 (C.D. Cal. July 28, 2014)..................................17

*Sevenson Envtl. Serv. v. Shaw Envtl.*,
   477 F. 3d 1361 (Fed. Cir. 2007)...............................................................20

*Tackett v. State Farm Fire & Cas. Ins. Co.*,
   653 A.2d 254 (Del. Sup. Ct. 1995) ...........................................................19

*Tetris Holding, LLC v. Xio Interactive*,
   No. 09-6115 (FLW), 2011 WL 13141049 (D.N.J. June 20, 2011)...........................19

*United States v. Ernstoff*,
   183 F.R.D. 148 (D.N.J. 1998)..............................................................23, 24

*United States v. Hankins*,
   631 F.2d 360 (5th Cir. 1980) ...............................................................11

*Upjohn Co. v. United States*,
   449 U.S. 383 (1981)..........................................................................10

*WLIG-TV, Inc. v. Cablevision Sys. Corp.*,
   879 F. Supp. 229 (E.D.N.Y. 1994) .....................................................15, 19

**Statutes and Rules**

28 U.S.C. § 1498.................................................................................20, 21

Fed. R. Civ. P. 26(b) .........................................................................2, 24, 25

Fed. R. Civ. P. 72(a) .............................................................................1, 9

I.    <u>Introduction</u>

Pursuant to Fed. R Civ. P. 72 and L. Civ. R. 72.1(c), Defendants Gibbs & Cox, Inc. ("G&C") and Lockheed Martin Corporation ("Lockheed Martin") respectfully request that the Court reverse the November 14, 2018 Order of the Honorable Karen M. Williams, U.S.M.J. (the "Magistrate Judge") denying Defendants' October 29, 2018 letter request for the production of certain documents on Plaintiffs' privilege log. D.I. 120 (the "November 14th Order"). The November 14th Order should be reversed for several reasons.

First, the Magistrate Judge addressed Defendants' implicit waiver argument, but did not rule on Defendants' arguments that Plaintiffs: (i) explicitly waived privilege by voluntarily and repeatedly producing privileged documents concerning the same subject matter, and (ii) improperly withheld 168 non-privileged documents solely because they were attached to purportedly privileged communications.

Second, the Magistrate Judge erred as a matter of law in deciding the implicit waiver issue. The Magistrate Judge relied solely on *Rhone-Poulenc Rorer v. Home Indem. Co.*, 32 F.3d 851 (3d Cir. 1994) in rendering her decision. But *Rhone-Poulenc* involved inapposite facts, namely, insurance claims, and did not address the statute of limitations issues presented here. To the extent *Rhone Poulenc* is relevant, Defendants respectfully submit the Magistrate Judge misapplied it. The facts here align more closely with those analyzed by *Livingstone v. N. Belle Vernon Borough*, 91 F.3d 515 (3d Cir. 1996), where the Third Circuit found an implicit waiver under the *Rhone-Poulenc* standard. Defendants discussed *Livingstone* at length in their October 29 letter. Neither Plaintiffs' responsive letter nor the November 14th Order addressed this precedent.

Third, Defendants respectfully submit the Magistrate Judge erred by denying Defendants' request without reviewing any of the withheld documents *in camera* to determine, for example, whether Plaintiffs are perpetrating a fraud on the Court. Plaintiffs represented in the Complaint

and in various pleadings that, prior to their 2016 review of discovery in FastShip LLC's patent litigation against the U.S. Navy, they had no "basis for suspecting that Defendants had improperly used FastShip's Trade Secrets, and had no basis for asserting a breach of contract" claim against Defendants.  D.I. 30 ¶ 40.  Plaintiffs' privilege log, however, appears to show the opposite—that they are withholding many documents, including ████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████  ████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████.  Plaintiffs have asserted that all of these communications are immune from discovery based on the "work product" doctrine, which of course applies only to materials created "in anticipation of litigation."  Fed. R. Civ. P. 26(b)(3).  FastShip Inc. could not have been ignorant of its claims in 2009 while at the same time anticipating to litigate them.

The Court should not permit Plaintiffs to avoid producing these potentially case-ending communications by hiding behind the shield of the attorney client privilege or the work product doctrine.  Indeed, if upon *in camera* review these withheld communications show that FastShip Inc. had been investigating in 2009 the same breach of contract and trade secret misappropriation claims asserted by its successors against the Defendants in 2017, such documents would support Defendants' claims that the case should be dismissed with prejudice as untimely.

## II.   Background

### A.   Factual Background

Plaintiffs allege that Defendants Lockheed Martin and G&C misappropriated trade secrets and breached their respective confidentiality agreements by using FastShip Inc.'s ("FastShip") tank testing data and by disclosing the tank testing data to the U.S. Navy during the performance of a preliminary design phase (*i.e.*, from 2003 to 2004) of the Navy's Littoral Combat Ship ("LCS") project.  The timing of the alleged disclosures (2003/2004) was more than six years before Plaintiffs filed any of their complaints in this case (in 2017), which places Plaintiffs' claims well outside of the longest possible statute of limitations of six years.

Plaintiffs, however, have invoked the "discovery rule," which effectively delays the accrual date for statute of limitations purposes until a party knew, or should have known, about the factual bases for its claims.  *Blystra v. Fiber Tech Grp., Inc.*, 407 F. Supp. 2d 636, 644 (D.N.J. 2005) ("The discovery rule provides that in an appropriate case, a cause of action will not accrue until the injured party discovers, or by exercise of reasonable diligence and intelligence should have discovered, facts which form the basis of a cause of action.").

Plaintiffs allege they only learned of their claims in 2016, within the statute of limitations, after discovery had been completed in Plaintiff FastShip LLC's patent litigation against the U.S. Navy.  According to Plaintiffs, they learned through that discovery that Defendants allegedly conducted "limited" tank testing, which "suggest[ed]" they used FastShip's confidential tank tests—and this particular discovery prompted Plaintiffs to initiate this lawsuit.  D.I. 30 ¶¶ 40, 43. Plaintiffs further argue that, prior to completion of discovery in the patent litigation, they "had no ability to discover that [alleged] lack of testing, had no other basis for suspecting that Defendants had improperly used FastShip's Trade Secrets, and had no basis for asserting a breach of contract, misappropriation of trade secrets, or other claim against Defendants."  D.I. 30 ¶ 40.

However, as raised in Defendants' 2017 motions to dismiss, documents produced by Plaintiffs show that FastShip knew or should have known of its potential claims no later than 2010,



. The Memo confirms that FastShip knew, and at the very minimum, should have known, of the facts that form the basis of its present claims, thus triggering the statute of limitations at least by 2010 (more than six years before any of the complaints in this case were filed). *Blystra*, 407 F. Supp. 2d at 644. Plaintiffs disputed the import of the Memo in their responses to Defendants' motions to dismiss, but, in its ruling on those motions, the Court limited discovery for this phase of the case to "the statute of limitations issue." D.I. 85 at 2.

During statute of limitations discovery, on October 5, 2018, Plaintiffs produced their privilege log, which shows that Plaintiffs are withholding communications, under the attorney client privilege and work product doctrines, that strongly suggest FastShip Inc. was investigating and anticipating litigation against Lockheed Martin as early as ***2009***. Critically, Plaintiffs knew

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████ [1]

       This bears out in Plaintiffs' privilege log entries.  For example, ████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

---

[1] "Ex." refers to an exhibit to the Certification of Joshua Calabro, filed herewith.





Ex. A (-000279, -000283).  Based on these entries, Plaintiffs have improperly withheld scores of potentially responsive documents under the guise of the attorney-client/work product privileges in order to conceal what they knew about trade secret/breach of contract claims against the Defendants in the 2009-2011 time frame.  As discussed below, this is improper because Plaintiffs have waived privilege on this specific subject matter.

Plaintiffs also assert privilege and work product protections for all attachments to the withheld correspondence, including documents that are clearly in the public domain, and despite the failure to assert an independent basis for withholding them.

### B.    Procedural Background

In accordance with L.Civ.R.37.1(a)(1), Defendants presented the privilege log dispute via an October 29, 2018 letter to the Magistrate Judge.  D.I. 109.  The letter sought the production (or, at a minimum, *in camera* review) of the following documents (and their attachments) listed on Plaintiffs' privilege log (Exs. A, B) (with prefix FASTSHIP_PRIV): 000042-50, 000053-58, 000061, 000065-68, 000072-73, 000086-87, 000093, 000095, 000098-104, 000106-113, 000124, 000128, 000162, 000168-169, 000171, 000190-201, 000203-205, 000210-272, 000275-279, 000283-284, as well as all documents on Plaintiffs' privilege log described as an "attachment to

[a] privileged communication." Defendants' letter explained that the documents are not privileged and/or that any privilege had been waived, either: (i) explicitly through voluntary disclosure; or (ii) implicitly through Plaintiffs' invocation of the discovery rule in response to Defendants' statute of limitations defense (or by otherwise putting the privilege at-issue).

On October 31, Plaintiffs filed an opposition letter, which largely failed to respond to the substance of Defendants' arguments. D.I. 111. Plaintiffs alluded to purportedly controlling Third Circuit law more than a dozen times, yet neglected to mention—much less distinguish—the *Livingstone* decision where the Third Circuit found an implicit waiver on facts analogous to those here. And, in support of their argument that a party does not waive privilege by invoking the discovery rule, Plaintiffs string cited at least four cases that stated the exact opposite. Moreover, Plaintiffs failed to carry their burden of establishing privilege and work product protection. For example, Defendants pointed out that Plaintiffs improperly claimed work product protection for, among other documents, a publicly-available ███████. Plaintiffs' one-sentence conclusory response—Defendants' assertion has "no merit"—did not even try to show how that ███████ (or any other document) satisfied the requirements for work product protection.[2]

On November 14, the Magistrate Judge held a telephone status conference during which she heard argument on the parties' disputes regarding Rule 30(b)(6) deposition topics, but did not hear argument on the parties' privilege log dispute. When Defendants raised the privilege dispute, the Magistrate Judge ruled that "on this record, by these submissions, I do not believe the waiver has occurred." Ex. I (22:16-23:2). The following day, pursuant to Defendants' request, the Magistrate Judge issued the November 14th Order, which included a written decision applying *Rhone-Poulenc*, but failing to address the case law in Defendants' letters. D.I. 120. The

---

[2] Defendants filed a reply letter on November 9 to address Plaintiffs' baseless insinuation about a violation of ethical rules. D.I. 116.

November 14th Order addressed the implicit waiver argument but did not mention any of the other arguments in Defendants' October 29 letter.  *See* D.I. 109 ((1) "Plaintiffs Implicitly Waived Privilege"; (2) "Plaintiffs Explicitly Waived Privilege"; (3) "Plaintiffs' Privilege Log Lists Documents That, on Their Face, Are Not Privileged"; and (4) "Work Product Protection Does Not Apply.").

## III.   Legal Standard

A district court may set aside an order of a Magistrate Judge concerning a non-dispositive matter where the order has been shown to be "clearly erroneous or contrary to law."  *Marks v. Struble*, 347 F.Supp.2d 136, 149 (D.N.J. 2004); Fed. R. Civ. P. 72(a); L. Civ. R. 72.1(c)(1)(A).  A finding is clearly erroneous "when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."  *Marks*, 347 F.Supp.2d at 149 (citation omitted).  A ruling of a Magistrate Judge is "contrary to law if the Magistrate Judge misinterpreted or misapplied the applicable law."  *Id*.

Judge Williams did not make any factual findings.  Rather, the November 14th Order was based solely on an application of law (*i.e., Rhone-Poulenc*), which is reviewed by this Court *de novo*.  *Doe v. Hartford Life & Accident Ins. Co*., 237 F.R.D. 545, 548 (D.N.J. 2006) ("[A] magistrate judge's legal conclusions on a non-dispositive motion will be reviewed *de novo*.")

## IV.   Argument

### A.   The November 14th Order Failed to Address Two Key Disputes.

Defendants argued in their October 29 and November 9 letters that: (1) Plaintiffs improperly withheld documents solely because they were attached to privileged communications; and (2) Plaintiffs explicitly waived privilege by repeatedly producing privileged documents about related subject matter.  Those issues remain unresolved.

9

### 1.   Plaintiffs' Privilege Log Lists Documents That, on Their Face, Are Not Privileged

Plaintiffs' privilege log lists 168 documents that are being withheld solely because they were attached to purportedly privileged communications.  Ex. A.  Plaintiffs have not credibly asserted that any of those documents are independently privileged.  To the contrary, the privilege log actually confirms that many are not independently privileged.  See Ex. A, -000151_0001 (a publicly available ███████████████████████).  The categorical withholding of these documents is improper and an abuse of the attorney-client privilege, and the Plaintiffs should be required to produce them immediately.

"[I]f an email is privileged but contains attachments, 'each attachment must individually satisfy the criteria for establishing the privilege. Merely attaching something to a privileged document will not, by itself, make the attachment privileged.'"  *Margulis v. Hertz Corp*., No. 14-1209 (JMV), 2017 U.S. Dist. LEXIS 28311, at *15 (D.N.J. Feb. 28, 2017) (citation omitted); *In re Gabapentin Patent Litig*., 214 F.R.D. 178, 186 (D.N.J. 2003) (ordering production of "[n]on-privileged communications or documents forwarded or Cc'd to an attorney").  Plaintiffs do not seriously dispute this concept, nor could they.  Indeed, the authority in Plaintiffs own letter (D.I. 111 at 6 n.4) confirms that they have no basis in law for withholding such documents:

> [A]dding to the privilege for communications a privilege against production of the preexisting documents themselves, when they would be subject to production if still in the possession of the client, ***would be an intolerable obstruction to justice***. To prevent the court's gaining access to a relevant document a party would only have to send it to his lawyer.  So here this principle is controlling: if a document would be subject to an order for production if it were in the hands of the client it will be equally subject to such an order if it is in the hands of his attorney.

McCormick on Evid. § 89 (7th ed. 2016) (emphasis added); *Upjohn Co. v. United States*, 449 U.S. 383, 395-96 (1981) ("[A client] may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communications to his attorney.")

(citation omitted).[3]  The Magistrate Judge's ruling failed to address FastShip's burden to prove

that the attachments or any of the other withheld documents were, in fact, privileged—a contention

Defendants vigorously contest.  Rather, the Order assumed without analyzing the issue that all of

the documents were "privileged."  D.I. 120 at 2.  Defendants submit that the failure to address this

critical issue constitutes error requiring reversal.

Accordingly, Plaintiffs should be ordered to produce the 168 documents described as an

"[a]ttachment to privileged communication" or an "[a]ttachment to privileged document."[4]

## 2.    Plaintiffs Explicitly Waived Privilege

Plaintiffs explicitly waived any privilege that could attach to information related to the

2010 Giles Memo by producing privileged information to the U.S. Navy and to Defendants.  "A

voluntary relinquishment of a privileged communication by a holder of the privilege to someone

not a party to the privilege generally waives its protection."  *Margulis*, 2017 U.S. Dist. LEXIS

28311, at *15.

Here, Plaintiffs produced an



_____

[3] Plaintiffs' other authority lends no more support to their argument.  In *United States v. Hankins*, 631 F.2d 360 (5th Cir. 1980), an attorney's uncontroverted testimony established that information was privileged.  *Id.* at 362, 365 ("Q: Did you consider the examination of these books and records essential to the legal advice which you would give to these gentlemen? A: Yes, sir. I did.").  In *Bumgarner v. Hart*, No. 05-3900, 2007 WL 38700, at *3 (D.N.J. Jan. 4, 2007), no one challenged whether the information was privileged, so the Court had no occasion to address whether attachments to emails must independently satisfy the requirements for privilege.

[4] Plaintiffs also assert without support that they have produced some of the documents described on their privilege log as an attachment to a privileged communication.  D.I. 111 at 6.  Defendants respectfully request that the Court order Plaintiffs to identify each such document by bates number.

██████████ Ex. F at FASTSHIP_00141060. ███████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

█████████████████ D.I. 57-4 Ex. V at FS0000258; *see* Ex. E.[5]  Mr. Bullard's letter was not only sent to third-party investors and produced in this case, but was also produced about five years ago in FastShip LLC's patent litigation against the U.S. Navy.  And it has never been clawed back. Plaintiffs therefore explicitly waived privilege as to all information pertaining to that subject matter, including communications regarding the Memo itself (*e.g.*, Ex. A, -000098 through 000104 and -000106 through 000113), as well as the 139 documents relating to a ████████████████████

████████████████████████████████████.  Ex. A; *see In re Grand Jury Subpoena Issued to Galasso*, 913 A.2d 78, 87-88 (N.J. Super. Ct. App. Div. 2006) ("[O]nce the holder discloses privileged communications, he has waived the privilege with respect to related privileged information pertaining to the same subject matter.").  In *V. Mane Fils S.A. v. Int'l Flavors and Fragrances, Inc*., for example, defendant obtained opinion letters from counsel concerning the invalidity of patents owned by the plaintiff.  No. 06–2304, 2008 WL 619207 at *1-*3 (D.N.J. March 4, 2008).  Defendant then disclosed those opinion letters to potential customers.  *Id*.  The Court held that "where a party is attempting to gain an advantage or make offensive use through intentional disclosure, there must be a full subject matter waiver."  *Id*. at 4.

Plaintiffs produced other privileged documents relating to this subject matter, which reinforce their waiver of privilege.  D.I. 109 at 6.  However, after Defendants filed their October 29 letter, Plaintiffs contended for the first time that they inadvertently produced three of those documents, and tried to claw them back.  As Defendants explained in their November 9 letter (D.I.

---

[5] Earlier drafts of the Memo, dated, *e.g.*, February 18, 2010, did not contain the ██████████ ██████████ language.  *See* Ex. D.

116), the documents were not inadvertently produced but rather deliberately produced on multiple occasions. All three were produced years ago in FastShip LLC's patent litigation against the U.S. Navy. ████████████████████████, which according to bankruptcy papers numbered in the hundreds. *See* D.I. 116. Thus, Plaintiffs cannot claw them back at this stage. *See Ciba-Geigy Corp. v. Sandoz Ltd*., 916 F. Supp. 404, 412-13 (D.N.J. 1995) (two separate disclosures of privileged document waived privilege); D.I. 116 (citing additional cases where repeat disclosures waived privilege).

Nevertheless, Defendants have agreed not to make further use of these three documents, except as required to resolve the waiver dispute, while the dispute is pending. Defendants therefore will not re-argue why those documents further support a waiver finding, and Defendants instead incorporate by reference the arguments on page six of their October 29, 2018 letter (D.I. 109).

The Magistrate Judge did not address this explicit waiver argument either during the telephonic hearing or in the November 14th Order.

**B.    The Magistrate Judge's Ruling on Implied Waiver Is Contrary to Law.**

Independent of the "explicit waiver" issue, Defendants submit the Magistrate Judge erred as a matter of law in finding that Plaintiffs did not implicitly waive privilege. In particular, by relying solely on *Rhone-Poulenc* and disregarding more pertinent precedent, including *Livingstone*, where the Third Circuit found an implicit wavier on facts analogous to those here, Defendants submit the Magistrate Judge misapplied applicable law.

**1.    Plaintiffs Implicitly Waived Privilege.**

Plaintiffs implicitly waived privilege by invoking the discovery rule, which placed privileged communications regarding, *e.g.*, the Memo and the investigation of potential claims against Defendants, squarely at-issue. Courts have widely held that "an implied waiver of the attorney-client and/or attorney work product privilege" occurs "where a client affirmatively places

otherwise privileged information at issue in the case." *Graco, Inc. v. PMC Glob., Inc.*, No. 08-1304 (FLW), 2011 U.S. Dist. LEXIS 14717, at *35 (D.N.J. Feb. 14, 2011); *see also Galasso*, 913 A.2d at 87.

> [F]actors that courts have considered in determining whether a waiver by affirmative reliance has occurred . . . include:
>
> (1) assertion of the privilege was a result of some affirmative act, such as filing suit, by the asserting party;
>
> (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and
>
> (3) application of the privilege would have denied the opposing party access to information vital to his defense.

*Graco*, 2011 U.S. Dist. LEXIS 14717, at *35, citing *Hearn v. Rhay*, 68 F.R.D. 574, 581 (E.D. Wash. 1975) and *Rhone-Poulenc Inc. v. Home Indem. Co.*, 32 F.3d 851, 863 (3d Cir. 1994). "Other courts have focused on overriding fairness considerations in assessing whether an implied waiver has occurred." *Id.*

No New Jersey Courts have squarely addressed the implicit waiver of privilege in the context of the discovery rule. But Courts from multiple other jurisdictions have repeatedly held that invoking the discovery rule in response to a statute of limitations defense satisfied those factors and thereby waived privilege. For example, in *Lama v. Preskill*, 818 N.E.2d 443 (Ill. App. Ct. 2004), plaintiff claimed that she was unaware of her claims until after a surgery. The Court held that plaintiff had waived privilege because she invoked an exception to the limitations period, and defendants needed the communications with her attorney to ascertain the truth of whether the discovery rule applied. *Id.* at 450. Other Courts have come to similar conclusions. *See Landmark Screens, Ltd. Liab. Co. v. Morgan, Lewis & Bockius Ltd. Liab. P'ship*, No. C08-02581 JF (HRL), 2009 U.S. Dist. LEXIS 102579, at *7-8 (N.D. Cal. Oct. 21, 2009) ("Landmark has waived protection over communications that demonstrate when and how it learned of the alleged fraud, as

well as communications that relate to whether it had actual or presumptive knowledge of facts such that it was on inquiry of such fraud . . . .”); *Outpost Solar, LLC v. Henry, Henry & Underwood, P.C.*, No. M2016-00297-COA-R9-CV, 2017 Tenn. App. LEXIS 841, at *21-22 (Tenn. Ct. App. Dec. 29, 2017) (“The Court concludes that Plaintiffs put their privileged information at issue by pleading the discovery rule. . . . [B]y pleading ignorance of its cause of action against Defendants, Plaintiffs have made what Plaintiffs knew and when Plaintiffs knew it the dispositive issue of this case.”) (internal quotation marks omitted); *WLIG-TV, Inc. v. Cablevision Sys. Corp.*, 879 F. Supp. 229, 235 (E.D.N.Y. 1994) (“WLIG put otherwise protected information at issue by raising equitable doctrines to overcome a limitations bar. . . [,] and Cablevision has amply demonstrated that application of the privilege would deny it access to information vital to its defense.”).  Here, Plaintiffs also invoked the discovery rule.  As a result, Plaintiffs have similarly waived the privilege for the reasons identified in the case law.  The November 14th Order, however, does not address any of these cases.

Fairness also weighs in favor of waiver.  On their privilege log, Plaintiffs identified the type of claim, namely, a



*See, e.g.*, Ex. A, 000247-253; Ex. H, 00141039-042.  “Privilege may not be used both as a sword and a shield.”  *Graco*, 2011 U.S. Dist. LEXIS 14717, at *34, *45; *Galasso*, 913 A.2d at

87 (party "cannot 'use the privilege as a sword rather than a shield,' and thereby 'divulge whatever information is favorable to [the client's] position and assert the privilege to preclude disclosure of the detrimental facts.'") (citation omitted). Plaintiffs therefore should be required to disclose all documents regarding ████████████████████████████████████████ ████████████████████████ and the like, so Defendants can ascertain whether the documents described on the privilege log relate to trade secret misappropriation or breach of the confidentiality agreements between FastShip Inc. and the Defendants. The November 14th Order did not address this issue.

Moreover, most of the discovery rule cases cited in Plaintiffs' letter (D.I. 111 at 5) support Defendants' position and expressly reject Plaintiffs' arguments.

In *Elat v. Emandopngoubene*, No. PWG-11-2931, 2013 U.S. Dist. LEXIS 37875 (D. Md. Mar. 18, 2013), the Court explained that:

> Where a party invokes equitable tolling, the party's knowledge during the relevant statute of limitations period ***is critical*** to the issue . . . . Accordingly, whether a party knew or should have known about its potential suit may hinge upon the advice given by counsel, ***necessarily implicating privileged communications***. In these situations, the plaintiff is in a superior position to know when she discovered the cause of action and, thus, ***should not be able to keep her discussions regarding whether she had a cause of action protected***.

*Id*. at *7 n.4 (emphasis added).

In *Darius v. City of Boston*, 741 N.E.2d 52 (Mass. Sup. Ct. 2001), Plaintiffs claims would have been untimely "[o]nly if they knew or reasonably should have known of the" factual basis for them before January 15, 1996. *Id*. at 56. The Court rejected defendants' attempt to obtain documents created ***after*** that date. *Id*. ("What was placed 'at issue' in this litigation . . . by the plaintiffs' reliance on the so-called discovery rule in an effort to defeat the city's claim that their presentment was untimely, was not what their present counsel told them in the spring of 1996."); *see id*. at 57. The Court expressly recognized that documents created ***before*** January 15, 1996

could have been discoverable in view of Plaintiffs' invocation of the discovery rule.  *Id*. ("What was put 'at issue' was what the plaintiffs knew or should have known before January 15, 1996.").  Here, Defendants are only seeking documents dated within the period when Plaintiffs' claims would have been untimely if they knew of should have known of the factual basis for those claims.

In *Seaman v. Sedgwick* LLP, No. 11- 0664, 2014 WL 3738055, at *3 (C.D. Cal. July 28, 2014), the Court stated, "to the extent a document is pertinent to when the Receiver became aware, or should have become aware, of the claims against Sedgwick, the first two prongs of the [*Hearn*] implied waiver standard are met."  *Id*. at *3 ("The Receiver has certainly put his knowledge of the facts underlying these claims 'at issue,' and there is no doubt that he filed suit.").  The Court went on to explain that defendant's request for production was simply too broad, and exceeded the scope of information that was vital to the statute of limitations defense because, *e.g*., it encompassed communications after the critical date (similar to *Darius*).  *Id*.  The Court held that the proper scope for the waiver included "documents demonstrating when the Receiver ***and his counsel*** learned of the facts putting them on notice of their claims, and what those specific facts are"  *Id*. at *4 (emphasis added).  That is what Defendants are seeking here.

In *McCarthy v. Slade Assocs., Inc*., 972 N.E.2d 1037 (Mass. Sup. Ct. 2012), the Court "accept[ed] in general the premise that such a waiver might come into play where a statute of limitations defense is met by the plaintiff's reliance on the discovery rule."  *Id*. at 1047; *see id*. at n.24 ("[T]he attorney-client privilege may be waived when the client puts in issue information that otherwise would be protected by the privilege—such as information relating to when the plaintiff client knew certain facts that are directly relevant to the defendant's statute of limitations defense.").  The Court merely held that defendant had not shown at the time that "the privileged information sought to be discovered is not available from any other source" because they had not

yet taken other discovery. *Id.* Here, Defendants have served requests for admissions and interrogatories directed to the Memo and to Plaintiffs' investigation of their claims against Defendants. In response, Plaintiffs took the nonsensical position that  *See infra*, p. 21, *supra* pp. 4-5. They also identified

Ex. G at 9-10 (emphasis added). And they maintain that Mr. Giles had no reason to know about those claims prior to 2016.

But Plaintiffs' privilege log reveals that,

*See* Section II(A) & IV(C)(2). Accordingly, evidence concerning when FastShip and its counsel learned of the facts putting them on notice of their claims, and what those specific facts are, is not available from any source other than FastShip's communications with its attorneys.

## 2.    *Rhone-Poulenc* **Is Inapplicable.**

The November 14th Order relied solely on *Rhone-Poulenc*. But that case has only limited applicability, and does not control this dispute. As this Court has recognized, the Third Circuit expressly "limited its decision in *Rhone-Poulenc* to the facts of th[at] case." *Harding v. Dana Transport, Inc.*, 914 F.Supp. 1084, 1096 (D.N.J. 1996), citing *Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 486 (3d Cir. 1995) ("[O]ur holding in [*Rhone Poulenc*]—that a party does not lose the privilege to protect attorney-client communications from disclosure in discovery when his or her state of mind is placed at issue—was premised upon the unique facts of that case."). And *Rhone Poulenc*, like the *North River* and *Koppers* cases cited by Plaintiffs (D.I. 111 at 4 n.2),

involved insurance claims—not invocation of the discovery rule in response to a statute of limitations defense.

Moreover, *Rhone-Poulenc* itself makes clear that where, as here, "the claims and defenses in issue in this action arise under state law, . . . [Courts] should apply state law in determining the extent and scope of the attorney client privilege." 32 F.3d at 861-62. Thus, New Jersey law or Delaware law governs the claims here, whereas Pennsylvania law governed the claims in *Rhone-Poulenc*. *Id.* In the nearly twenty-five years since *Rhone-Poulenc* was decided, not a single New Jersey state court has relied upon it.[6] One Delaware state court has cited *Rhone-Poulenc*—and it precluded the party asserting privilege from using it as a sword and shield. *Grunstein v. Silva*, No. 3932-VCN, 2012 Del. Ch. LEXIS 267, at *3 (Del. Ct. Ch. Nov. 20, 2012).

Even after *Rhone-Poulenc*, New Jersey and Delaware Courts have continued to follow the *Hearn* standard applied by the discovery rule cases above (or comparable state law standards). *See Graco*, 2011 U.S. Dist. LEXIS 14717, at *35 (following *Hearn* standard); *Tetris Holding, LLC v. Xio Interactive*, No. 09-6115 (FLW), 2011 WL 13141049, at *13 (D.N.J. June 20, 2011) (same); *see also Doe v. Banos*, 966 F.Supp.2d 477, 486 n.10 (D.N.J. 2013) ("[T]hree foundations must be established by the party seeking to pierce the privilege: (1) there must be a legitimate need for the evidence; (2) the evidence must be relevant and material to the issue before the court; and (3) by a fair preponderance of the evidence, the party must show that the information cannot be secured from any less intrusive source."), citing *In re Kozlov*, 398 A.2d 882 (N.J. Sup. Ct. 1979); *Tackett v. State Farm Fire & Cas. Ins. Co.*, 653 A.2d 254, 259 (Del. Sup. Ct. 1995) ("The courts of this State have refused to allow a party to make bare, factual allegations, the veracity of which are central to resolution of the parties' dispute, and then assert the attorney-client privilege as a barrier

---

[6] Based on LexisNexis Shepard Report as of November 28, 2018.

to prevent a full understanding of the facts disclosed.").[7]  *Rhone-Poulenc* did not overturn those cases, but rather merely curtailed the expansive application of the privilege waiver where a party sought production of privileged documents based on the mere relevance of its adversary's state of mind.  As discussed above in Section IV(B)(1) and below in Section IV(B)(3), more than just FastShip's state of mind is at issue here.  *See WLIG-TV,* 879 F. Supp. at 235 (E.D.N.Y. 1994) (distinguishing *Rhone-Poulenc* and "garden-variety" cases in which "only the knowledge of a party is at-issue"; finding more "is at stake when a plaintiff seeks to overcome a statute of limitations bar by interjecting equitable doctrines.").

### 3. Even under *Rhone-Poulenc*, Plaintiffs have Waived the Privilege.

Although *Rhone-Poulenc* does not control this dispute, a proper application of the *Rhone-Poulenc* doctrine produces the same result—that Plaintiffs have still waived privilege.  Plaintiffs not only waived privilege by invoking the discovery rule, they further put their attorneys' advice at-issue by relying on a tortured interpretation of the ███████████████ accusation in the Memo.

Recognizing that the plain language of the Memo is fatal to their claims, Plaintiffs concocted the theory that the statement about a ███████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

---

[7] Like *Hearn*, Courts have curtailed expansive application of *Kozlov*, but New Jersey still recognizes implied waiver where a party places privileged communications at-issue.  *See Amerestate Holdings, LLC v. CBRE, Inc.,* No. A-2416-17T3, 2018 N.J. Super. Unpub. LEXIS 2025, at *17-*18, *23-*24 (N.J. Super. Ct. App. Div. Sep. 4, 2018).

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

Plaintiffs' argument runs counter not only to the English language, but also to the law.  Neither the U.S. Navy nor Defendants (as government contractors) could be liable for willful patent infringement in a lawsuit brought under 28 U.S.C. § 1498(a).  *Leesona Corp. v. United States*, 599 F.2d 958, 969 (Ct. Cl. 1979) (Section 1498(a) does not require the Government to pay treble damages for willful infringement); *Sevenson Envtl. Serv. v. Shaw Envtl.*, 477 F. 3d 1361, 1363 (Fed. Cir. 2007) (affirming "judgment that suit against a hazardous waste remediation contractor was barred by government contractor immunity under 28 U.S.C. § 1498.").

Plaintiffs' argument concerning the ████████████████ therefore is untenable, and they attempt to bolster that untenable position by emphasizing that Mr. Giles, a "***non-lawyer***," authored the Memo.  *See* D.I. 71 at 22 (emphasis added).  However, Plaintiffs' privilege log confirms that ██████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████



and thereby implicitly waived privilege as to the documents listed

above and requested in Defendants' October 29 letter.

As Defendants detailed in their October 29 letter, the Third Circuit's decision in *Livingstone*—which was not addressed by Plaintiffs or the Magistrate Judge, and which was decided two years after *Rhone-Poulenc*—is instructive. Defendants in *Livingstone* argued that a release agreement barred plaintiff's claims. *Id.* at 519. In response, plaintiff asserted that she did not "knowing[ly]" enter into that agreement because she was "unaware that [it] could be interpreted as foregoing a damage claim." *Id.* at 537. Making that argument waived privilege:

> [Plaintiff's] attorney played a central role in the negotiation of the release-dismissal agreement. . . . [Plaintiff's] assertion that she did not appreciate the release-dismissal agreement's legal implications is tantamount to a claim that her attorney did not give her accurate legal advice. It would be unfair to allow her to make this claim without permitting the opposing parties to investigate her attorney's version of the relevant events.

*Id.* at 537. Plaintiff in *Livingstone* in no way expressly and affirmatively "relied upon advice from counsel to prove [her] entitlement" to her claim, as the Magistrate Judge's reading of *Rhone-Poulenc* would require to find a waiver. D.I. 120 at 3; *see also* D.I. 111 at 5 (Plaintiffs mischaracterizing the law "in this Circuit" whereby "a party [purportedly] does not waive attorney-client privilege or work product protection unless it specifically and affirmatively seeks to prove

its claim by relying on a protected communication"). The Plaintiff in *Livingstone* did nothing akin to, *e.g.*, offering an opinion of counsel as evidence that she acted reasonably. In effect, Plaintiff did the opposite; by contending that she, as a lay person, did not understand the agreement could be interpreted as foregoing her claim, Plaintiff ***implicitly*** relied on the ***absence*** of legal advice. Yet those facts met the *Rhone-Poulenc* standard for a waiver.

Likewise here, ████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████ is "tantamount to a claim that his attorney did not give [him] accurate legal advice." *Livingstone*, 91 F.3d at 537. It would be unfair to allow Plaintiffs to make this claim without permitting Defendants to investigate Mr. Giles's communications with his attorneys. *Id.*

In *Livingstone* and here, more than merely a client's "state of mind" is at-issue; rather, affirmative acts by the parties opposing privilege placed their attorney's advice at-issue. There, Plaintiff consulted with her attorney in connection with a release agreement. Plaintiff then affirmatively injected into the case her lay understanding of that agreement, which was contrary to the law. Here, ████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████

Additionally, the Third Circuit in *Livingstone* distinguished *Rhone-Poulenc* because "one of the factors bearing on the enforceability of [the] release-dismissal agreement" in *Livingstone*

was "whether the defendant was counseled."  91 F.3d at 537 (citation omitted); *see id*. at n.36.

Plaintiffs' own case law shows the same is true here.  Plaintiffs have contended that they could not

have discovered the facts underlying their causes of action because both Defendants fraudulently

concealed their alleged wrongdoing.  D.I. 70 at 32-34; D.I. 71 at 28-29.  As the Court in *Elat*

explained, "whether the party was represented by counsel prior to the statute of limitations is a

factor to be considered in determining whether the party reasonably relied upon the alleged

misrepresentation of the defendant."  2013 U.S. Dist. LEXIS 37875, at \*7 n.4.

     **C.**      **Work Product Protection Does Not Apply.**

          **1.**     **Plaintiffs Did Not Even Attempt to Carry Their Burden.**

Plaintiffs did not attempt to carry their burden to establish that the work product doctrine

applies.  *United States v. Ernstoff*, 183 F.R.D. 148, 155 (D.N.J. 1998) ("The party asserting work

product protection has the burden of demonstrating that the documents were 'prepared in

anticipation of litigation.'"), quoting *Conoco, Inc. v. United States Dep't of Justice*, 687 F.2d 724,

730 (3d Cir. 1982).  Plaintiffs' privilege log states that more than 700 documents are protected as

"[a]ttorney [w]ork [p]roduct," including a publicly-available ███████████████████  Exs.

A, B; see Ex. A, -000151_0001.  Plaintiffs' October 31 letter did not even purport to show that

any of those documents met the requirements for work product protection.  *See* D.I. 111; *Ernstoff*,

183 F.R.D. at 156 ("In addition to the requirement that the documents produced be composed in

reasonable anticipation of litigation, 'the material must have been produced because of the

prospect of litigation and for no other purpose.'") (citation omitted).  Plaintiffs' blanket,

unsupported assertion of work product protection for nearly every document on the log is

improper, and Defendants reserve the right to respond to any specific assertions of work product

protection for individual documents.

Nevertheless, any work product claim fails for at least the reasons discussed above, *e.g.*, Plaintiffs' have "impliedly waived" work product protection by "placing the [subject matter] at-issue." *Harding*, 914 F. Supp. at 1098-1099.  Moreover, Defendants have a substantial need for the documents and cannot, without undue hardship, obtain their substantial equivalent by other means, particularly in view of Plaintiffs' position concerning the meaning of ███████ ████████ as well as Plaintiffs' other discovery responses that similarly defy credulity, such as their identification of ██████████████████████████ ██████████████████████████████████████████ ██████████████████████ Ex. K at 9-10 (emphasis added); *see* Fed. R. Civ. P. 26(b)(3).

## 2.    At a Minimum, the Court Should Conduct an *In-Camera* Review.

Plaintiffs' assertions of work product protection at the very least justify *in-camera* review to determine whether the crime-fraud exception applies.  In response to Defendants' motions to dismiss Plaintiffs' complaint as, among other things, untimely, Plaintiffs asserted "FastShip Did Not Know of its Current Claims in March 2010."  D.I. 70 at 21.  Plaintiffs, however, are withholding a ████████████████████████████████████████ ██████████████████████████. Ex. A (-00042 and attachments).  And Plaintiffs contend that email and its attachments are protected by the work-product doctrine.  Thus, by their own allegations, in 2009 Plaintiffs "anticipat[ed] . . . litigation" concerning the confidentiality agreements allegedly breached in this case (Fed. R. Civ. P. 26(b)(3)), directly contrary to their assertion in opposition to Defendants' motions to dismiss.[8]

---

[8] Plaintiffs may respond that FastShip only anticipated its patent litigation against the U.S. Navy, but this makes no sense.  That litigation did not (and could not) involve Defendants in this case. *See supra*, pp. 4-5, 21.  And the confidentiality agreements between FastShip and Defendants

Moreover, shortly after █████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████  However, Plaintiffs' theory that they were not aware of their claims at the time forecloses work product protection for those documents. *See In re Pfohl Bros. Landfill Litig.*, 175 F.R.D. 13, 27-28 & n.8 (W.D.N.Y. 1997) ("[B]ased on Plaintiffs' stated position that there was no reasonable basis to believe they had a claim earlier than December 19, 1994 . . . no litigation could have been contemplated," and therefore no work product protection could apply.)

At a minimum, Plaintiffs should be required to submit the documents requested by Defendants for *in camera* inspection to determine whether the crime-fraud exception applies.  In *In re Neurontin Antitrust Litigation*, 801 F.Supp.2d 304, 307, 311 (D.N.J. 2011), for example, the Court found defendant's apparent misrepresentations suggested "fraud on the court" might have occurred, and therefore decided to review documents *in camera* to determine whether the crime-fraud exception applied.  *Id.* at 308, 311 ("[Defendant's] representations to the court on the subject provide 'a factual basis adequate to support a good faith belief by a reasonable person that in camera review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies.' . . . If the statements made to the court were untrue, Class Plaintiffs are entitled to probe what the speakers knew and what Pfizer knew about those speakers' statements.") (citation omitted).

---

████████████████████████████████████████████████████  had no bearing on any of the issues in the patent litigation.

To the extent that the withheld communications indicate to the Court that FastShip Inc. was investigating the present claims in 2009, well before any possible statute of limitations, such documentation would support an immediate dismissal of the present case with prejudice.

**V.     Conclusion**

For the foregoing reasons, Defendants respectfully request that the Court vacate Magistrate Judge Williams' November 14, 2018 Order (D.I. 120) and compel Plaintiffs to produce the documents sought in Defendants' October 29, 2018 and November 9, 2018 Letters (D.I. 109 and D.I. 116) or, at a minimum, compel Plaintiffs to produce those documents for *in camera* inspection and grant Defendants appropriate relief as proposed above, and such other and further relief as the Court deems just and proper.

Dated:  November 28, 2018                    /s/ Liza M. Walsh
                                            Liza M. Walsh
                                            Christopher M. Hemrick
                                            WALSH PIZZI O'REILLY
                                            FALANGA LLP
                                            One Riverfront Plaza
                                            1037 Raymond Boulevard, Suite 600
                                            Newark, NJ 07102
                                            (973) 757-1100

                                            Pasquale A. Razzano (*pro hac vice*)
                                            Douglas Sharrott
                                            Josh Calabro (*pro hac vice*)
                                            VENABLE LLP
                                            1290 Avenue of the Americas
                                            New York, NY 10104
                                            (212) 218-2100

                                            *Counsel for Defendant*
                                            *Gibbs & Cox Inc.*

<u>/s/ Mark Lichtenstein</u>
Mark Lichtenstein
CROWELL & MORING LLP
590 Madison Ave., 20th Floor
New York, NY 10022
(212) 223-4000

Michael J. Songer (*pro hac vice*)
Astor H.L. Heaven (*pro hac vice*)
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC 20004
(202) 624-2500

*Counsel for Defendant*
*Lockheed Martin Corporation*