# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

FASTSHIP, LLC and LIQUIDATING TRUST OF FASTSHIP, INC.,

        Plaintiffs,

    v.

LOCKHEED MARTIN CORPORATION and GIBBS & COX, INC.,

        Defendants.

---

1:17-cv-2919-NLH-KMW

**OPINION**

**FILED UNDER SEAL**[1]

**APPEARANCES:**

CHRISTOPHER JOHN LEAVELL
KLEHR HARRISON HARVEY BRANZBURG LLP
457 HADDONFIELD ROAD - SUITE 510
CHERRY HILL, NJ 08002

RAYMOND HOWARD LEMISCH
KLEHR HARRISON HARVEY BRANZBURG LLP
1835 MARKET STREET PHILADELPHIA, PA 19103

GREGORY M. WILLIAMS (*pro hac vice*)
RICHARD W. SMITH (*pro hac vice*)
SCOTT A. FELDER (*pro hac vice*)
KATHERINE C. CAMPBELL (*pro hac vice*)
WILEY REIN LLP
1776 K STREET NW
WASHINGTON, DC 20006

DONALD E. STOUT (*pro hac vice*)
FITCH, EVEN, TABIN & FLANNERY LLP

---

[1] This Opinion will be filed under seal for 10 days in the unlikely event some portion of this Opinion warrants sealing from public view. During that time, the parties shall notify the Court of any information they request to remain under seal pursuant to Local Civil Rule 5.3(c)(3). The Court will also resolve the parties' pending joint motion to seal directed at their briefing at that time. (Docket No. 204.)

1250 23RD STREET NW, SUITE 410
WASHINGTON, DC 20037

    *On behalf of Plaintiffs*

MARK SIGMUND LICHTENSTEIN
CROWELL & MORING LLP
590 MADISON AVENUE 20TH FLOOR
NEW YORK, NY 10022

MICHAEL J. SONGER (*pro hac vice*)
ASTOR H.L. HEAVEN (*pro hac vice*)
CROWELL & MORING LLP
1001 PENNSYLVANIA AVENUE, NW
WASHINGTON, DC 20004

    *On behalf of Defendant Lockheed Martin Corporation*

LIZA M. WALSH
CHRISTOPHER MATTHEW HEMRICK
COLLEEN M. MAKER
WALSH PIZZI O'REILLY FALANGA LLP
ONE RIVERFRONT PLAZA
1037 RAYMOND BLVD. 6TH FLOOR
NEWARK, NJ 07102

PASQUALE A. RAZZANO (*pro hac vice*)
DOUGLAS SHARROTT JOSH CALABRO (*pro hac vice*)
FITZPATRICK, CELLA, HARPER, & SCINTO
1290 AVENUE OF THE AMERICAS
NEW YORK, NY 10104

    *On behalf of Defendant Gibbs & Cox, Inc.*

**HILLMAN**, **District Judge**

    This case concerns breach of contract and misappropriation of trade secret claims relating to confidential information shared by Plaintiffs FastShip, LLC and Liquidating Trust of FastShip Inc. (collectively referred to as "FastShip") with Defendants Lockheed Martin Corporation ("Lockheed Martin") and Gibbs & Cox Inc. ("G&C") when pursuing a contract with the

United States Navy ("U.S. Navy").  Pending before the Court are motions for summary judgment by Defendants, and a motion for partial summary judgment by Plaintiffs, all of which concern whether the applicable statutes of limitations bar Plaintiffs' claims.[2]  For the reasons stated below, the Court finds that Plaintiffs' claims are time-barred, and, consequently Plaintiffs' motion will be denied, and Defendants' motions will be granted.

<u>**BACKGROUND**</u>

The Court takes its facts from the parties' briefing, the material facts not in dispute, and the procedural history of the case.  Plaintiffs filed this action on April 28, 2017, alleging one count of misappropriation of trade secrets and one count of

---

[2] Also pending is a motion to strike by Defendant Lockheed Martin.  (Docket No. 175.)  Lockheed Martin asks that this Court strike from the record and not consider six declarations filed by Plaintiffs in support of their motion for partial summary judgment.  Lockheed Martin argues that these declarations violate Federal Rules of Civil Procedure 26 and 56, Local Rule 7.2(a), as well as various Rules of Evidence, because they (i) are not based on first-hand knowledge and instead contain speculation, conjecture, and improper opinions and argument; (ii) contain irrelevant statements and inadmissible hearsay; and (iii) derive from witnesses who were never disclosed during the limited discovery period.  Plaintiffs have opposed Lockheed Martin's motion to strike, arguing that the submitted declarations are not improper and should not be stricken.  The Court will refrain from opining on the propriety of the six challenged declarations and deny Lockheed Martin's motion as moot because the Court's consideration of those declarations would not alter the Court's decision on the merits of Defendants' motions for summary judgment.

breach of contract.  After several iterations of complaints and motions to dismiss, the Court denied Defendants' motions to dismiss and limited the relevant issues to the statute of limitations.  The facts relevant to the issue of whether Plaintiffs' claims were timely filed are summarized below.

In 2003, the U.S. Navy issued a publicly available "Request for Proposal" ("RFP") for its Littoral Combat Ship Program ("LCS Program").  Through this RFP, the Navy sought to commission a new type of warship that could operate in coastal areas of emerging combat zones while maintaining exceptionally high speed, long endurance, heavy weapon-load, shallow draft, and low cost.  As a part of the RFP response, potential responders were required to submit a "Hullform Development Report" along with certain types of tank testing data[3] in their proposals.  This Hullform Development Report was meant to be a "comprehensive reporting document documenting the development of all aspects of the LCS hull form" and served as "verification of the sustainability of the hull for the LCS application."  As such, the Hullform Development Report required responders to supply data addressing a number of criteria and models.  Initial responses were due on April 14, 2003.

---

[3] Tank testing is used to verify the performance characteristics of a ship's design.

Defendant Lockheed Martin aspired to respond to this RFP and began assembling a team.  At one point, this team included Lockheed Martin, Defendant G&C, Marinette Marine, and Bollinger Shipyards, with Lockheed Martin as the prime contractor.  According to Lockheed Martin, because of the Navy's requirements for speed, armaments, and shallow draft, Lockheed Martin decided to propose a new type of hullform for a ship this large: the semi-planning monohull ("SPMH").[4]

David Giles, one of Plaintiff FastShip's founders, had filed for and received patents for a similar SPMH design in 1991 and 1993.  Lockheed Martin was interested in a partnership with FastShip for the LCS project because of its historical knowledge of the SPMH.  To facilitate this exchange of information, Lockheed Martin and FastShip executed both a non-disclosure agreement (the "Confidentiality Agreement") and a Memorandum of Understanding (the "MOU").  The parties dispute what testing data, information, and patents are covered by these agreements.

In April 2003, Lockheed Martin submitted its proposal to the U.S. Navy and won a preliminary design contract.  The preliminary design phase of the contract began in July 2003.

---

[4] The parties agree that at this point, only small patrol vessels used the SPMH.  Most large ships used displacement hulls.  This traditional hull would have been too long and too deep to meet the shallow draft and speed requirements for the LCS and would have been considerably more expensive.

FastShip's name was included in the RFP response, but was not included as part of the preliminary design team.  The parties dispute when FastShip became aware that it was not included on the preliminary design team and the reasoning for not including FastShip.

Nonetheless, FastShip provided the Lockheed Martin team with its data on multiple occasions.  In February 2003, FastShip presented to Lockheed Martin and G&C the prelude design and tank test results, which utilized a similar SPMH design.  In March 2003, FastShip sent Lockheed Martin additional data regarding performance comparisons between the prelude design and a Swedish navy craft.  In April 2003, Giles sent an email providing more comparative data to a contact at Lockheed Martin, specifically designating that the data was "for LCS purposes."  At this point, FastShip considered the prelude design data to be confidential and proprietary.

In November 2003, Jerry Festa of Lockheed Martin requested FastShip's tank testing data.  The parties dispute what projects Festa was involved in and what information FastShip had about Festa's involvement in the LCS program.  FastShip provided its tank testing data to Lockheed Martin in response to this request.  FastShip asserts that this request was the first time it became clear that Defendants were requesting FastShip's data for the LCS program.  Defendants dispute this assertion.

6

The parties dispute the extent to which Defendants conducted their own tank tests, including propulsion tests. FastShip asserts that Defendants conducted a limited number of tank tests given the industry standard and the Navy's requirements. Defendants dispute this characterization of its testing. G&C informed FastShip that they would conduct their own tank tests and issued press releases stating they had conducted their own tests.

In December 2003, FastShip faxed more tank testing data to Festa. FastShip considered this data to be confidential and proprietary. Two FastShip employees, Roland Bullard (FastShip's CEO) and Einar Pedersen, were copied on emails regarding the tank testing data.

Ultimately, Lockheed Martin and its team won the LCS final design contract some time in 2004. FastShip reached out to Lockheed Martin to inquire about the hull design on the LCS. Though Lockheed Martin replied that "no data rights issues have been identified" regarding Lockheed Martin's LCS design, FastShip doubted the veracity of this response. Lockheed Martin maintains that this statement did not explicitly include a reference to patent infringement. According to FastShip, this inquiry concerned FastShip's patent infringement claims, not its claims regarding use of its data. In contrast, Lockheed Martin characterizes these claims as relating to FastShip's concerns

7

that Lockheed Martin has used FastShip's tank testing data to win the contract.

FastShip suspected that Lockheed Martin had infringed on its patents.  However, a relationship with Lockheed Martin was important to FastShip for a number of reasons,[5] and FastShip representatives and the Board of Directors believed that filing a patent infringement suit would not have been perceived as a "friendly act."  The parties dispute whether FastShip possessed the time and resources to pursue a patent infringement claim in 2004 and 2005.  Instead of suing Lockheed Martin for patent infringement during this time period, Giles and Bullard monitored various websites and public documents regarding the LCS program and FastShip's Board of Directors continued to receive updates on the progress of the LCS and the status of FastShip's patent infringement concern.

The first LCS vessel, named the USS Freedom, was launched and christened on September 23, 2006.  Lockheed Martin terminated its partnership to design the LCS in January 2007.

---

[5] The parties agree that as a start-up, FastShip valued its relationship with Lockheed Martin, a large established defense contractor, because: (a) Lockheed Martin was a project manager during the construction of ships and terminals; (b) Lockheed Martin was important in setting up the commercial program and establishing customer relationships; and (c) Lockheed Martin was helping develop military applications for the hull.  FastShip also agrees that a relationship with Lockheed Martin is important for "credibility, equity, Spanish connections and project management."

The USS Freedom was commissioned by the Navy on November 8, 2008.

Once the LCS was launched and christened, FastShip analyzed a potential patent infringement lawsuit, but ultimately concluded that it could not sue Lockheed Martin on this basis. FastShip then assessed other potential claims against Lockheed Martin.  FastShip concluded that to pursue its claims, it would file an administrative action under the Federal Acquisition Regulations ("FAR").  FastShip further understood that if this administrative action failed, FastShip would have to file suit against the U.S. government.  Giles noted that FastShip was in a "critical situation" and it would need to "try to elicit at least the initial support of [] shareholders to finance such litigation."

FastShip proceeded with the administrative claim against the Navy, filing a formal claim in April 2008.  The parties dispute whether FastShip emphasized the Confidentiality Agreement and use of its research data in making this claim.  In early 2010, FastShip and the Ben Barnes Group, an organization FastShip had hired to liaise with the Navy, met with the Navy to discuss the administrative claim.  In March 2010, Giles prepared a memorandum (the "2010 Memorandum"), which Bullard sent to the Honorable Sean J. Stackley, a member of the Office of the Assistant Secretary of the Navy (Research, Development, and

Acquisition).  The parties dispute certain details of the 2010 Memorandum.[6]  The 2010 Memorandum provides background on the relationship between FastShip, Lockheed Martin, and the U.S. Navy's LCS project, and traces the history of FastShip's development of the SPMH technology and its patents.  FastShip also provided a chronology of its relationship with Lockheed Martin, including times that FastShip provided its confidential tank testing data to Lockheed Martin.  In April 2010, the Navy denied FastShip's administrative claim.

The parties agree that FastShip never directly asked Lockheed Martin whether it used its confidential tank testing data.  As detailed above, FastShip did ask Lockheed Martin whether the LCS ships would infringe on FastShip's patents.

In March 2012, FastShip filed for bankruptcy.  In June 2012, the U.S. Bankruptcy Court for the District of Delaware approved an Amended Funding Agreement that set forth the terms and conditions under which FastShip LC, the Liquidating Trust of

---

[6] Specifically, the parties dispute its purpose.  Lockheed Martin stated the purpose of the 2010 memo as "catalogu[ing] the wealth of data validating the SPMH technology providing over many years, from which [the Lockheed Martin team and the U.S. Navy] have already obtained benefit in the LCS program."  FastShip describes the purpose of the 2010 memo as "reassert[ing]the claim by [FastShip] that there has been a knowing violation of its US Patent on the SPMH by Lockheed Martin in their LCS design," and responding "the request made at the Meeting of members of the Barnes Group with Assistant Secretary Sean Stackley . . . for more information on the historical and technical background to the [FastShip] Claim."

FastShip, Inc., would receive funding for patent litigation against the U.S. Government.

In August 2012, FastShip filed a lawsuit against the U.S. Government, alleging that Lockheed Martin's design infringed on FastShip's patents. FastShip alleges that over the course of patent discovery, there was no indication that Defendants had used FastShip's tank testing data. Lockheed Martin contests this allegation as immaterial and untrue. In April 2017, the Court of Federal Claims found that one of Lockheed Martin's LCS ships infringed on FastShip's patent.

FastShip filed this complaint on April 28, 2017. FastShip's Second Amended Complaint contains two counts: (1) Breach of Contract; and (2) Misappropriation of Trade Secrets. Both Lockheed Martin and G&C have moved for summary judgment, and Plaintiffs have moved for partial summary judgment, all on the issue of whether the applicable statues of limitations bar Plaintiffs' claims. These matters have been fully briefed and are ripe for adjudication.

<u>**DISCUSSION**</u>

**A. Subject Matter Jurisdiction**

The Court has diversity jurisdiction over this case under 28 U.S.C. § 1332, as there is complete diversity between the parties and the amount in controversy exceeds $75,000. (See

Docket No. 5 at 2, which sets forth the citizenship of the parties.)

**B. Summary Judgment Standard**

Summary judgment is appropriate when the Court is satisfied that "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits if any,' . . . demonstrate the absence of a genuine issue of material fact" and that the moving party is entitled to a judgment as a matter of law. Celotex, 477 U.S. at 322-23 (citing Fed. R. Civ. P. 56).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (citing Anderson, 477 U.S. at 255).

Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact.

Celotex, 477 U.S. at 323 ("[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact.").

Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial.  Celotex, 477 U.S. at 324.  A "party opposing summary judgment 'may not rest upon the mere allegations or denials of the . . . pleading[s].'" Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).  For "the non-moving party[] to prevail, [that party] must 'make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial.'"  Cooper v. Sniezek, 418 F. App'x 56, 58 (3d Cir. 2011) (citing Celotex, 477 U.S. at 322).  Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party.  Anderson, 477 U.S. at 257.

In this case, the parties have filed cross motions for summary judgment.  The summary judgment standard is not affected

when parties file such cross motions.  See Stepan Co. v. Callahan Co., 568 F.Supp.2d 546, 549 (D.N.J. 2008) (citing Appelmans v. City of Phila., 826 F.2d 214, 216 (3d Cir. 1987)). If review of cross-motions for summary judgment reveals no genuine issue of material fact, then judgment may be entered in favor of the party deserving of judgment in light of the law and undisputed facts.  See Iberia Foods Corp. v. Romeo Jr., 150 F.3d 298, 302 (3d Cir. 1998) (citation omitted).

**C. Analysis**

FastShip has moved for partial summary judgment on Defendants' statute of limitations defense.  Defendants have moved for summary judgment in their favor because it contends that FastShip's claims are barred by the statute of limitations.

**1.** *New Jersey's Discovery Rule*

The parties have agreed that application of the "Discovery Rule" is central to the outcome of this case.  Under New Jersey's "discovery rule," a cause of action does not accrue "'until [a] plaintiff learns, or reasonably should learn, the existence of that state of facts which may equate in law with a cause of action." New West Urban Renewal Co. v. Viacom, Inc. 230 F. Supp. 2d 568, 572 (D.N.J. 2002) (quoting Burd v. New Jersey Tel. Co., 76 N.J. 284, 291 (N.J. 1978)).  "Discovering that one might have a basis for an actionable claim means perceiving an injury and believing, or having reason to believe

14

— with a degree of firmness that would lead a reasonable person to investigate the matter if he is interested in seeking redress — that his injury was probably caused by the fault of another." Staub v. Eastman Kodak co., 320 N.J. Super. 34, 45 (App. Div. 1999). This is a "narrow exception to the inquiry notice rule" that applies when a plaintiff "proves that a reasonable investigation at the time would not have revealed a factual basis for [a] a particular cause of action." Clark v. Prudential Ins. Co. of America, 940 F. Supp. 2d 186, 206 (D.N.J. 2013).

When determining whether to apply the discovery rule, the Court should "take into account and balance all equities of each case for purposes of determining whether the party invoking the rule is equitably entitled to its benefit." Amland Props. Corp. v. Aluminium Co. of America, 808 F. Supp. 1187 1191 (D.N.J. 1992).

### 2. *Statute of Limitations*

This Court has previously held that New Jersey's six-year statute of limitations applies to FastShip's claims. (Docket No. 84 at 32.) As such, FastShip's claims are untimely if they accrued before April 28, 2011. The issue before this Court is whether there is any genuine issue of material fact regarding whether FastShip "discovered" – *i.e.*, perceived or had reason to

perceive - prior to April 28, 2011 any breach of contract or misappropriations of trade secrets claims.

Plaintiffs argue that FastShip did not and could not have learned of the factual basis of its trade secret claim before the patent case discovery. Plaintiffs assert that the existence of the patent claims did not alert FastShip to the claims in this case. According to Plaintiffs, the 2010 Memorandum does not and cannot establish that FastShip had knowledge of these claims in 2010 as suspicions are not equivalent to knowledge of trade secrets theft. Plaintiffs also argue that a party that has knowledge of patent infringement does not necessarily have knowledge of a claim for trade secrets theft.

Defendant Gibbs & Cox argues that the statute of limitations was triggered in relation to the claims against it in 2003. Gibbs & Cox further argues that as to both Defendants, the statute of limitations was triggered in 2004, 2006, and 2010, all well before this suit was brought.

Defendant Lockheed Martin argues that FastShip had inquiry notice of its claims as early as December 2003. Lockheed Martin contends that FastShip had actual notice of its claims in 2007 and 2009. Finally, Lockheed Martin contends that FastShip knew of the factual bases for its claims by 2010, as evidenced by the 2010 Memorandum.

The Court has fully reviewed the briefs and supporting documents provided by the parties, and has carefully considered the parties' arguments.  The Court finds that FastShip's cause of action accrued in 2010 at the latest, and at that time, FastShip should have known the facts underlying its alleged breach of contract and trade secret misappropriation claims through the exercise of reasonable diligence, yet it failed to take any action until seven years later - one year too late under the six-year statute of limitations for both of its claims.

Affording FastShip the benefit of the doubt that prior to March 2010 it had not been put on actual or inquiry notice for its claims against Defendants,[7] and even assuming for the purposes of the parties' motions that Defendants misappropriated FastShip's trade secrets and breached their confidentiality agreements,[8] the March 2010 memo undisputedly demonstrates that

---

[7] As outlined above and argued by Defendants, the record shows that it is likely FastShip had, at a minimum, inquiry notice of its breach of confidentiality and trade secret misappropriation claims as early as 2003, 2004, 2007, and 2009.  The Court focuses on the March 2010 memorandum because it is a compilation of events over the course of the previous seven years that forms the basis of FastShip's claims.

[8] Defendants vigorously dispute the substance of FastShip's claims against them.  However, the analysis of whether the six-year statute of limitations applies does not depend on their liability, but rather on an assessment of FastShip's awareness of its claims and its duty to timely pursue them.

if FastShip did not have actual notice at that time, it had sufficient information to recognize its potential claims against Defendants, which triggered FastShip's obligation to take reasonable steps to investigate further.

In relevant part, FastShip's March 2010 memo provides a detailed chronology of the various times over the previous seven years that it had provided its tank testing data to Defendants, including in advance of Lockheed Martin's presentation to the U.S. Navy, and in two subsequent communications from Giles. FastShip concluded:

> FSI was invited to make a presentation, covered by confidentiality and nondisclosure agreements, of the Prelude design and tank test results to LM and their naval architects Gibbs & Cox (G&C) showing initial compliance with LCS LM's Requirement . . . . LCS design therefore represents not only an infringement of FSI's SPMH patent but also a breach of confidentiality.  It is FSI's opinion that USN and LM have benefitted – and will continue to do so – from the wealth of technical and other data made available to them by FSI.  This has confirmed the practicality of enlarging the SPMH to far greater size than had previously been considered reasonable.

(Docket No. 161-19 at 5.)

This language from FastShip demonstrates that as of March 2010, it believed Defendants had already benefited from FastShip's proprietary research, which was covered by the parties' confidentiality agreements.  FastShip argues, however, that the March 2010 memo - and the impermissible sharing of its data - relates only to its patents, and not to trade secrets or

confidentiality agreements.  As for the latter, the memo explicitly states that FastShip believed Defendants' actions had breached their agreements.  By FastShip's own words, it knew of the factual basis of its breach of contract claim, which triggered its duty to either assert such a claim within the applicable statute of limitations, or investigate more so it could do so.

As for FastShip's trade secrets, although the March 2010 memo does not specifically use the words "trade secret misappropriation," no reasonable factfinder could conclude that the content of the memo, taken as a whole, does not encompass such a claim.  Defendants' alleged use of FastShip's "wealth of technical and other data" which is covered by confidentiality and nondisclosure agreements would "lead a reasonable person to investigate" his "perceived injury," Staub, 320 N.J. Super. at 45, *i.e.*, the misuse of his "trade secret," which "may consist of any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it," Hammock by Hammock v. Hoffmann-LaRoche, Inc., 662 A.2d 546, 560 (N.J. 1995).

FastShip contends that it only learned of the factual basis for its trade secret misappropriation claim in late 2016/early 2017 after reviewing the documents produced during discovery in

the patent infringement suit against the U.S. government. FastShip claims that it became aware that (i) Lockheed Martin conducted limited tank testing, and (ii) the tank testing Defendants did conduct was largely directed at a "gap" in FastShip's tank testing from Lockheed's perspective.  FastShip argues that this "gap" testing supports a powerful inference that Defendants relied on FastShip's tank testing to conclude themselves, and to convince the U.S. Navy, that the enlarged semi-planing hull Lockheed proposed for the LCS Program was viable.

Whatever FastShip learned about Defendants' alleged gap testing in 2016/2017 does not erase the fact that at least six years earlier FastShip already believed that Defendants had used its confidential tank testing in some improper way.  Although FastShip may not have known at the time exactly how Defendants used its information - which FastShip claims it figured out during the patent case years later - as of March 2010 FastShip had been alerted to the reasonable possibility that Defendants had inappropriately used its data, and the record it clear that FastShip did nothing to find out more.[9]

_____

[9] Defendants contend that FastShip never asked if they were using FastShip's testing data, which is information Defendants could have shared because it was a request from a party to their confidentiality and nondisclosure agreements about that party's own data.  FastShip appears to agree that it did not ask, but contends that Defendants do not state that they would have

20

Plaintiffs have failed to present any disputed issues of material fact to show that a reasonable investigation before April 2011 would not have revealed a factual basis for a breach of contract claim or misappropriation of trade secrets claim. Plaintiffs' claims of breach of contract and misappropriation of trade secrets are therefore time-barred.

## CONCLUSION

For the reasons expressed above, Defendants' motions for summary judgment will be granted in their entirety. Plaintiffs' motion for partial summary judgment will be denied. Defendant Lockheed Martin's motion to strike will be denied. An appropriate Order will be entered.

Date: __November 17, 2020_____         ___s/ Noel L. Hillman ____
At Camden, New Jersey                 NOEL L. HILLMAN, U.S.D.J.

---

truthfully responded to that inquiry. The lack of a concrete answer to this issue demonstrates the necessity of due diligence to investigate once a party becomes aware of a potential claim. If FastShip had made the inquiry of Defendants in March 2010 about whether and how they were using its testing data, FastShip may have had a plausible basis for the tolling of the statute of limitations, depending on Defendants' answer, and the veracity of their answer. But FastShip never asked. Similarly, the parties dispute FastShip's true motivation for not pursing its claims earlier, with Defendants contending that it was a strategic decision by FastShip based on a variety of factors, while FastShip contends it could not have done so because it was in the dark as to its claims until 2016. Regardless of the reasons FastShip did not inquire further about Defendants' alleged use of its trade secrets and breach of their confidentiality agreements, FastShip cannot obtain the equitable benefits of the discovery rule through its own inaction - either intentional or through an unreasonable failure to investigate its own perceived injury.